In the Matter of the Accounting of JOSEPH W. HICKS, Appellant, as Executor of JOHN R. REMSEN, Deceased.

CARRIE A. E. TOWNSEND, Respondent.

GUARDIAN AND WARD — IDENTIFICATION OF TRUST FUND — CODE CIV. PRO. § 2606. There is no presumption that a trust fund, which had been in the hands of a general guardian for many years and was unpaid and unaccounted for at the time of his death, is a part of his estate in the hands of his executor, and the ward is not entitled to an order, under section 2606 of the Code of Civil Procedure, compelling such executor to pay over the amount due to her from such trust fund in preference to other creditors of decedent, without proof that the assets of decedent in the hands of his executor are a part of, or derived from, the trust fund.
    *Matter of Hicks*, 54 App. Div. 582, reversed.

(Argued January 6, 1902; decided March 25, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, made November 23, 1900, which modified, and affirmed as modified, an order of the Queens County Surrogate's Court directing the appellant herein to pay to the respondent a certain sum of money, being part of the amount of a fund with which said appellant's testator was chargeable as the guardian of said respondent.

The facts, so far as material, are stated in the opinion.

*Clarence Edwards* and *Clinton B. Smith* for appellant. The claim made by the respondent that the established debt of her deceased guardian of itself, without identification of the trust fund specifically, entitled her to the relief sought is erroneous. (*Matter of Van Slooten* v. *Dodge,* 145 N. Y. 327; *Shorter* v. *Mackey,* 13 App. Div. 20; *Matter of Cavin* v. *Gleason,* 105 N. Y. 256; *Cole* v. *Cole,* 54 App. Div. 37; *Perkins* v. *Stimmel,* 114 N. Y. 359.) The order appealed from is a final order in a special proceeding, and appeal therefrom to this court is given by law. (*Matter of Regan,* 167 N. Y. 338.) The original decision was a determination of a question of law, and is here reviewable. (*Eaton* v. *Wells,* 82 N. Y. 576; *People ex rel.* v. *N. Y. C. & H. R. R. R. Co.,* 156 N. Y. 570.)

*John R. Townsend* and *Edward V. Slauson* for respondent. The appellant was properly chargeable with possession of the trust fund. (*Clemens* v. *Clemens,* 37 N. Y. 74; *Matter of Holmes,* 37 App. Div. 15; 159 N. Y. 532; *Holmes* v. *Gilman,* 138 N. Y. 369; *Matter of Cavin* v. *Gleason,* 105 N. Y. 256; *Van Alen* v. *Am. Nat. Bank,* 52 N. Y. 1; *People* v. *Bank of Rochester,* 96 N. Y. 33.) The surrogate had power to make an order divesting the appellant of the possession of this trust fund. (Code Civ. Pro. §§ 2472, 2603, 2606; *Matter of Clark,* 119 N. Y. 427; *Matter of Wiley,* 119 N. Y. 642; *Matter of Moehring,* 154 N. Y. 423.)

CULLEN, J. On January 23, 1872, under a decree of the surrogate of Queens county settling the estate of Thomas B. Remsen, the father of Carrie A. E. Remsen, the respondent herein, one John R. Remsen, received as guardian for said Carrie, then an infant about seven years old, the sum of $2,726.81. In the same year said John R. Remsen, as executor of Jacob Remsen the grandfather of the respondent, held the further sum of $1,000, bequeathed by said Jacob Remsen to the respondent. On the death of her father the respondent went to live in the family of said John R. Remsen. She was

supported by her guardian, but he never accounted to her for either sum of money. In April, 1893, John R. Remsen died, leaving a will of which the appellant, Joseph W. Hicks, is the executor. In 1894, the respondent filed a claim against the estate of her deceased guardian for the amount due to her, which claim was referred under the statute. The referee made a report in her favor for the sum of $2,105.89, being the balance found due to her after charging the guardian's estate with the amounts received by him and interest thereon and crediting the estate with the amount paid for the respondent's support. On the report of the referee judgment was entered in the Supreme Court. The appellant was called to account for his proceedings as executor. Pending the accounting the respondent applied for an order under section 2606 of the Code of Civil Procedure to compel the appellant to pay over to her the amount due on her judgment. The application was based on affidavits stating the nature of the plaintiff's claim, that it was for a trust fund and that the amount of the estate received by the appellant was more than sufficient to satisfy it. The appellant, in answer to the application, filed an affidavit stating that he had claims against the estate amounting to some $6,000, which were then before the surrogate awaiting his decision; that as to $1,000 of his claim it was of the same nature as that of the respondent, to wit, for a trust fund; that one Walters held a claim for $500 of a similar character; that as executor he received in the estate of his testator but $1,700 in cash and debts due to the deceased, out of which he had paid over $800 in funeral expenses and expenses of administration; that $3,500 was received by him from insurance on the life of his testator. He denied that any of the trust fund belonging to the respondent had come into his hands. No testimony was taken by the surrogate, but on these affidavits he ordered that the appellant, as executor of John R. Remsen, pay to the respondent or her attorney within fifteen days the sum of $2,130.11, with interest thereon from October 9, 1896, or in default thereof be punished as for contempt. The Appellate Division modified this order so as to

direct the payment to be made into the Surrogate's Court and affirmed the order as modified.

The theory on which the courts below have proceeded and for which the respondent contends on this appeal is that as her claim was for the appropriation of a trust fund and the estate of her guardian which passed to the executor was greater than her claim, her trust fund must be presumed to be part of such estate and that she is entitled to payment over other creditors. The rule in equity is "that as between *cestui que trust*, and trustee, and all parties claiming under the trustee otherwise than by purchase for a valuable consideration, without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust. This settled doctrine of equity has its basis in the right of property. * * * But it is the general rule as well in a court of equity as in a court of law, that in order to follow trust funds and subject them to the operation of the trust, they must be identified." (Andrews, J., *Matter of Cavin* v. *Gleason*, 105 N. Y. 256.) In that case the application for payment was denied and it was further said : "It is clear, we think, that upon an accounting in bankruptcy or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent, merely on the ground of the nature of his claim, that is, that he is a trust creditor as distinguished from a general creditor." So in *Ferris* v. *Van Vechten* (73 N. Y. 113) it was held : "To follow money into lands and impress the latter with the trust, the money must be distinctly traced and clearly proved to have been invested in the lands. * * * It does not suffice to show the possession of the trust funds by the trustee, and the purchase by him of property — that is, payment for property generally by the trustee does not authorize the presumption that the purchase was made with trust funds." In *Holmes* v. *Gilman* (138 N. Y. 369) the premiums paid on the insurance policies, the proceeds of which were subjected to the plaintiff's claim,

were clearly shown to have been paid out of moneys fraudulently taken from the partnership. There Judge PECKHAM said that the plaintiff had the right to follow the fund and appropriate the property into which it had been changed, "provided the trust fund can be clearly ascertained, traced and identified." I know of no case bearing on this subject that does not prescribe the limitation that the trust fund must be "ascertained, traced and identified," and the respondent's proof entirely fails to comply with this requirement.

Twenty years elapsed between the receipt by the guardian of the respondent's funds and his death. During that period there is no trace of the fund. He never paid the respondent interest on it and it does not appear that he ever invested it; nor is there anything to show what was the guardian's financial position during that time. He may at some intermediate period have been without property, and the estate which he left at his decease may have proceeded entirely from money or property obtained from other creditors. A presumption without any proof to support it can no more be indulged in in favor of the respondent's claim than in favor of that of any of the other creditors. To do so would in effect be simply holding that because the plaintiff's claim is for a breach of trust it is entitled to a preference.

There are further objections in this case to the order that has been granted. At the time of the testator's death the amount of money in his estate was only $1,700. The other sums received by his executor were the proceeds of an insurance policy on the life of the deceased. Yet he has been directed to pay over a sum in excess of $2,100. He swears that there are two other claims against the estate also for the conversion of trust money amounting to $1,500. If these claims should be allowed they would stand on exactly the same footing as that of the respondent, and surely the respondent can be entitled to no preference over those creditors. Therefore, in no aspect of the case was the surrogate, on the evidence before him, justified in directing the payment of the respondent's claim. It may be that if the respondent had

produced her proofs she might have succeeded in tracing her moneys and also in disproving the rival claims. But the summary disposition of the application made by the surrogate cannot be sustained.

The order appealed from should be reversed, without costs, and the proceeding remitted to the surrogate to take such proofs as the parties may produce.

WERNER, J. While I concur in the conclusion that the order of the Appellate Division must be reversed and this proceeding remitted to the Surrogate's Court for further and proper proofs, I am unable to assent to some of the reasons which are presented by Brother CULLEN to justify that result. There can be no disagreement as to the equitable rule which underlies the rights of the parties to this proceeding. It is well stated in *Matter of Cavin* v. *Gleason* (105 N. Y. 260), as follows: "As between *cestui que trust* and trustee, and all parties claiming under the trustee, otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be changed in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust." Nor can it be doubted that the necessary and logical corollary of this rule is that the right of the *cestui que trust* to follow and appropriate the trust property ceases only when the means of ascertainment fail (*Holmes* v. *Gilman*, 138 N. Y. 376), which is but another way of saying that it must be "ascertained, traced and identified." Our difference in this case arises over the application of the rule to the facts of this case. The trust fund herein was clearly traced into the hands of the appellant's testator, the deceased guardian of the respondent. At the time of said guardian's death he had in his possession an amount of property which was more than sufficient to satisfy the trust fund. There was no written account or other affirmative evidence to show whether any part of this property was a portion of the trust fund or the proceeds thereof. It consisted of money,

choses in action and real estate. To the extent that it consisted of money or property in which said guardian had the right to invest the trust funds, I think there is a presumption that it was a part of the trust fund, and this presumption was sufficient to cast upon the deceased guardian's executor, the appellant herein, the burden of proving that it was not a part of the trust fund or the proceeds thereof. (Perry on Trusts, sec. 128.) Neither law nor equity should presume dishonesty or dereliction of duty where the conduct of one who is charged with the trust is consistent with honesty and performance of duty. Nor should *cestui que trust* be charged with the *onus* of making proof which the trustee is presumed to have in his possession or which the latter's negligence or misconduct has put it out of the power of the former to produce. Such a rule would put a premium upon dishonesty in fiduciary relations and upon official misconduct. Confusion resulting from the acts of the trustee should never embarrass the rights of the owner or *cestui que trust* in following his property. (Perry on Trusts, secs. 447, 847; Story on Eq. Jur. secs. 468, 623 ; Story on Agency, secs. 205, 332, note.) The "means of ascertainment" of a trust fund do not fail until the court has probed the memory, conscience and accounts, if any, of the trustee whose delinquency is urged as his only defense. The rule for which I contend is not in conflict with the doctrine that a trust fund must be "ascertained, traced and identified" before it can be appropriated to the purposes of the trust. Neither is it at variance with the decisions cited in the opinion of Judge CULLEN. In *Matter of Cavin* v. *Gleason* (*supra*) there was clear affirmative proof that the trust fund had been used for the payment of the trustee's individual debts, and, hence, the *cestui que trust* were of necessity remitted to their rights as general creditors. In *Holmes* v. *Gilman* (*supra*) the partnership funds were definitely traced into a policy of insurance which one of the partners had procured upon his own life for the benefit of his wife, and it was held that the *cestui que trust*, the surviving partner, was entitled to the proceeds of the policy which were less

than the amount of the trust fund. In *Ferris* v. *Van Vechten* (73 N. Y. 113) it was held that the misappropriation by executors of a fund created for a specific purpose will not be presumed, but must be proved. The real point of contention in the case at bar was not involved in either of the cases referred to. We are dealing, not with the necessity for ascertainment, but with the method by which it should be accomplished. I agree that there can be no presumption that the real estate, of which the deceased guardian had title, and the proceeds of the insurance policy upon his life were a part of the trust fund. This is because the guardian has no right to make such investments. But as to the money and choses in action in which the guardian had the right to invest the trust funds and which in the aggregate amounted to less than the trust fund, I think there is a presumption that it was a part thereof. A man will not be presumed to have done wrong when the circumstances are such that he may have done his duty. An analogous principle was applied in the leading case (*In re Hallett's Estate*, L. R. [13 Ch. Div.] 696), where JESSEL, Master of the Rolls, said : " Nothing can be better settled either in our own law, or, I suppose, the law of all civilized countries than this, that where a man does an act which may be rightfully performed, he cannot say that that act was intentionally and, in fact, done wrongly. A man who has a right of entry cannot say he committed a trespass in entering. A man who sells the goods of another as agent for the owner cannot prevent the owner adopting the sale and deny that he acted as agent for the owner. It runs throughout our law and we are familiar with numerous instances in the law of real property. A man who grants a lease believing he has sufficient estate to grant it, although it turns out he has not, but has a power which enables him to grant it, is not allowed to say that he did not grant it under the power. Wherever it can be done rightfully, he is not allowed to say against the person entitled to the property or the right that he has done it wrongfully. That is the universal law."

It is true that here there are creditors of the deceased

guardian whose rights are to be recognized. But what are those rights? Simply to resort to the individual assets of the guardian for the payment of their claims. Where a trust fund has been traced into the hands of a trustee and, at the time when conflict of interest arises between the *cestui que trust* and the individual creditors of the trustee, the latter is shown to be possessed of assets of such a character that it is doubtful whether he holds them in one capacity or another, there is quite as much reason for the presumption that they are a part of, or proceeds of, the trust fund as there is for the presumption that they are the trustee's own property. For these reasons I dissent from the statement in Judge CULLEN's opinion that respondent's proof entirely fails to comply with the requirement that the trust fund must be "ascertained, traced and identified." And I respectfully submit that enough was shown to put the executor of the deceased guardian to his proof, at least as to the money on hand at the time of the guardian's death and as to some of the choses in action. This rule should be applied in the further hearing of this proceeding in the Surrogate's Court.

GRAY, O'BRIEN and BARTLETT, JJ., concur with CULLEN, J.; PARKER, Ch. J., and HAIGHT, J., concur with WERNER, J.

Ordered accordingly.