### In re STEVENSON (two cases).

### In re KERNOCHAN.

(Supreme Court, Appellate Division, First Department. April 22, 1910.)

1. DEPOSITS IN COURT (§ 9*)—CESTUI QUE TRUST—NECESSITY.

Where there is no known or ascertainable cestui que trust who can claim funds in court, the funds are not properly trust funds.

[Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. § 10; Dec. Dig. § 9.*]

---

2. DEPOSITS IN COURT (§ 11*)—PROCEEDINGS FOR PAYMENT—JURISDICTION OF COURT.

Under Const. art. 6, §§ 1, 2, continuing the Supreme Court with general jurisdiction in law and equity, etc., and Code Civ. Proc. § 217, providing that the general jurisdiction in law and equity of the Supreme Court includes all the jurisdiction possessed by the Supreme Court of the Colony in New York and by the Court of Chancery in England, etc., the Appellate Division has jurisdiction to direct the payment of funds in court, to which there are no claimants, to sufferers from an unfortunate investment of their moneys by a former chamberlain of the city of New York on mortgages, which in foreclosure resulted in a large deficiency; but the court cannot direct the payment to such persons of funds in court to which there are claimants.

[Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. § 12; Dec. Dig. § 11.*]

3. DEPOSITS IN COURT (§ 11*)—PAYMENT OF FUNDS—STATUTES.

Laws 1892, c. 651, providing for the payment to the State Treasurer of funds paid into court which shall have remained in the hands of any county treasurer or of the chamberlain of the city of New York for 20 years, etc., applies only to moneys paid into court which have remained in the hands of any county treasurer or of the chamberlain of the city of New York for 20 years and to which there are or may be known or ascertainable claimants, and does not apply to funds in court to which there are no known or ascertainable claimants, and funds in court which have remained for over 20 years and to which there are known or ascertainable claimants should be paid to the State Treasurer.

[Ed. Note.—For other cases, see Deposits in Court, Cent. Dig. § 12; Dec. Dig. § 11.*]

Applications by Maxwell Stevenson, by Eloise Kernochan, and by Paul E. Stevenson for a payment out of the general fund of the Supreme Court. Matter referred back to the referee to make certain calculations and to draft a decree in conformity with directions.

See, also, 135 App. Div. 924, 120 N. Y. Supp. 1147.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Wilmer, Canfield & Stone, for the motion.

Robert P. Beyer, opposed.

PER CURIAM. The petitioners are sufferers from an unfortunate investment of their moneys by a former chamberlain, in mortgages which upon foreclosure resulted in a large deficiency. Their respective losses appear to have been as follows:

Maxwell Stevenson.......................................... $13,616 58
Eloise Kernochan............................................ 3,599 36
Paul E. Stevenson........................................... 2,825 99

They ask to have their losses made up to them out of a fund in the hands of the chamberlain known as the "general fund of the Supreme Court."

It appears, from a table annexed to the report of the referee, that there have been in the course of years a considerable number of such losses; their aggregate, including interest compounded annually at 4 per cent. down to January 1, 1908, being $135,794.46. If any of these losses are paid, they should all be paid so far forth as the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

available funds, if any, will permit. Of the petitioners' money the sum of $64,000 was invested in a mortgage made by one Margaret O'Sullivan. Upon foreclosure the property mortgaged was bought in by the chamberlain and subsequently resold by him, at a total profit of $502.28, amounting at the date of the referee's report, with interest, to $726.06, which sum now stands credited to a special account known as the "Margaret O'Sullivan mortgage account." There can be no doubt that the petitioners are entitled to have this sum paid to them in the proportions in which their moneys were invested in said mortgage, to wit, Maxwell Stevenson 39¼ per cent., Eloise Kernochan 34½ per cent., and Paul E. Stevenson 26¼ per cent.

The fund from which the petitioners seek reimbursement is known officially as the "general fund of the Supreme Court, Appellate Division, for the First Department." It was created under an order of this court, dated January 6, 1905, by the consolidation of four separate funds or accounts which had been kept by the chamberlain. The titles by which said funds were known, and the amounts standing to the credit of each when the consolidation took place, were as follows:

| | |
|---|---|
| General fund of the Supreme Court | $10,564 68 |
| Surplus balance account | 6,922 65 |
| Interest account | 20,975 49 |
| Contingent account | 5,518 79 |
| Total | $43,981 61 |

The general fund of the Supreme Court had its origin in two funds accumulated by the Court of Chancery, subsequently transferred (in 1847) to the clerk of the Court of Appeals, and later to the chamberlain. Its history is carefully traced by the referee, and it is unnecessary to set it out in detail here prior to 1865, when it had been reduced by payments made by order of the court to $17.59. On December 22, 1865, the General Term of the Supreme Court made an order directing the chamberlain to transfer to the general fund the difference between simple and compound interest on sums deposited with the New York Life Insurance & Trust Company, and in the future to transfer to said fund, annually, interest on interest. Pursuant to this order there was transferred on December 31, 1865, to the general fund from 30 different accounts, the sum of $6,913.10. Subsequently other sums were transferred, the total amount of the transfers down to December 29, 1879, being $16,576.26, and numerous payments were made from it, aggregating $11,635.12. Interest upon this fund was credited to it down to December 31, 1884, amounting to $5,605.95. After that date whatever interest was earned on the fund was credited to the surplus interest account. Its amount, as the referee finds, was $5,881.26. It appears that this fund consisted wholly of interest taken from 30 specified and known accounts, and is therefore traceable, and in fact has been traced, to its sources. All parties agree that so much of this fund as remains should be returned pro rata to such sources in proportion to the amounts transferred to make up the fund. This amount is therefore concededly not available to make good the petitioners' losses.

The "surplus balance account" was made up of small balances of undistributed interest on surplus moneys, taken from a great number of accounts. It commenced on December 31, 1890, with a credit of $6,918.49, which was increased on December 17, 1892, to $6,922.65. Whatever interest accrued on this sum down to January 6, 1905 (the date of consolidation of the funds), was credited to the surplus interest account. The referee estimates it at $2,394.36. The accounts from which the fund was made up have been traced and identified. So much of the fund is therefore returnable to the sources from which it was derived, and should be so returned. All parties concede this. The petitioners cannot therefore be reimbursed out of this fund. The surplus interest account, amounting at the time of consolidation to $20,975.49, was made up, in the words of the referee, "in one way or another, entirely from accumulations of interest on various funds which had been deposited with the chamberlain in trust," in the manner set forth in detail in the referee's report. All of the expert witnesses testified that it would be impracticable to trace the various accounts from which this interest was taken.

As has already been said, however, interest earned on the general fund of the Supreme Court, estimated at $5,881.26, and interest earned on the surplus balance account, estimated at $2,394.36, were credited to this "surplus interest account." This interest should be returned to the respective funds upon which it was earned. The remainder of the fund is absolutely untraceable, and, if no payments are authorized to be made out of it, will go on accumulating until eternity.

The contingent account, amounting at the time of consolidation to $5,518.79, was opened on December 23, 1848, and has been credited from time to time with small unclaimed balances of various kinds. It has been as low as $18.61 in 1882, and as large as $42,785.26 in 1885. It has been used, as its title indicates, as a contingent account from which all sorts of payments have been made, including sums to make good losses on mortgage investments. The expert witnesses all agree that it is impossible to trace the sources of this fund so that it can be redistributed, and it is made perfectly manifest by the referee's report, and the evidence taken by him, that neither of the last two mentioned funds can be traced back to their original sources, except as to certain items of interest above referred to, and that it is impossible to credit them back to any accounts so that any person can ever establish a claim to any part of them. They are emphatically "dead" funds, which will go on accumulating forever if left undisturbed. There being no known or ascertainable cestui que trust who can make claim upon them, these funds cannot properly be called "trust funds." Matter of Hicks, 170 N. Y. 195, 63 N. E. 276. The Supreme Court and its predecessor has always exercised plenary power to order payments to be made out of such funds as this for various purposes, including, on more than one occasion, the reimbursement of suitors whose money had been paid into court and lost through unfortunate investments. This power was vested in the Court of Chancery of England as early, at least, as 1725, being provided for and recognized by many acts of Parliament. 12 Geo. I, cc. 32, 33 (1725); 12 Geo. II, c. 24 (1839); 4 Geo. III, c. 33 (1764); 5 Geo. III,

c. 28 (1765); 9 Geo. III, c. 19 (1768). This power passed to the Court of Chancery of this state upon the organization of the state, and thence to the Supreme Court. Const. 1846, art. 6, § 3; Const. 1894, art. 6, § 1; Code Civ. Proc. § 217. It was formerly exercised for the court by the General Term thereof, and its jurisdiction is now possessed by the Appellate Division. Const. 1894, art. 6, § 2. We consider that the authority and jurisdiction of this court to order payments to be made out of these last-mentioned funds is fully established, and we consider that a part, at least, of such funds, should be applied to the relief of the petitioners and others similarly situated.

It is contended on behalf of the State Treasurer that the present entire consolidated fund should be paid over to him under the provisions of chapter 651, Laws 1892. That contention seems to be well founded as to so much of the fund as was taken from and is to be returned to the general fund of the Supreme Court and the surplus balance account to which there are known or ascertainable claimants. That act applies only, however, to moneys paid into court, which have remained in the hands of any county treasurer, or of the chamberlain of the city of New York, for 20 years, and to which there are or may be known or ascertainable claimants, and does not apply to funds like the interest account and the contingent account, to which, as has been said, there are no such claimants.

It is now some time since the referee's report was signed, and his computations of interest are not carried down later than January 1, 1908. In order to make a decree for the distribution of the several funds, it will be necessary to have the computations brought down to the present time. It will therefore be referred back to the referee to make the necessary calculations and to draft a form of decree in conformity with the following directions: (1) The amount standing to the credit of "Margaret O'Sullivan mortgage account" shall be ascertained and ratably distributed among the petitioners according to their proportionate interests therein as found by the referee. (2) The amount now standing to the credit of the "general fund of the Supreme Court, Appellate Division, First Department," shall be ascertained. From this fund shall be paid the fees and disbursements of the referee. (3) The said fund shall then be disintegrated, and the amount thereof distributed proportionately among the several funds of which it was created. (4) From the surplus interest account shall be paid to the general fund of the Supreme Court, and the surplus balance account, respectively, the interest which should have been paid into those accounts but was in fact paid into the surplus interest account, as reported by the referee, together with the estimated amount of interest earned upon said sums and paid into the surplus interest account. (5) The general fund of the Supreme Court, and the surplus balance account, as thus reinstated, should then be distributed among and credited to the several accounts from which they were taken, and the amounts should then be paid over to the Treasurer of the State of New York, together with a statement of the several accounts to which they are applicable under the provisions of section 9 of chapter 651 of Laws 1892. (6) The balance remaining in the surplus interest account and the contingent account shall be

consolidated into an account to be known as the "general fund of the Supreme Court, First Department," and the amount of said fund with, the accumulations of interest ascertained. From this fund will be paid to the petitioners, and to others similarly situated, such proportion of their losses as may, upon the coming in of the report, appear to be reasonable; due regard being had to reserving in said fund a sum which may be applied hereafter to proper purposes.

The counsel who appeared before the referee have rendered most valuable and laborious services in unraveling a very complicated matter; but we doubt our authority to grant them allowances out of the fund.