In the Matter of the Petition of JOHN FORD and Another to Render and Settle Their Account as Executors of PATRICK J. MENAHAN, Deceased, as Administrator of CATHERINE F. MENAHAN, Deceased.

JOHN FORD and Another, as Executors of PATRICK J. MENAHAN, Deceased, as Administrator of CATHERINE F. MENAHAN, Deceased, Appellants; WILLIAM DRENNAN, as Executor and Sole Legatee under the Last Will and Testament of MARY FRANCES MENAHAN DRENNAN, Deceased, and Another, Respondents.

Second Department, June 22, 1928.

*Warren C. Fielding,* for the appellants.

*Albert Conway* [*Francis X. Brosnan* and *Thomas J. Snee* with him on the brief], for the respondents.

KAPPER, J.   As to the facts involved there is no dispute.

Catherine F. Menahan died intestate February 15, 1909.   She left surviving her husband, Patrick J. Menahan, and her daughter, Mary or May F. Menahan Drennan, who was the wife of William Drennan, as her only next of kin.   Letters of administration upon the goods, chattels and credits of Catherine F. Menahan, deceased, were granted by the Surrogate's Court of Kings county on February 25, 1909, to said Patrick J. Menahan.

Mary F. Menahan Drennan died November 10, 1921, leaving a last will and testament by which her husband, the said William Drennan, was appointed sole executor and under which he is the sole beneficiary.

On July 24, 1922, the said Patrick J. Menahan died, leaving a last will and testament which was probated in the Kings County Surrogate's Court August 11, 1922, under which will letters testamentary were granted, on said date, to John Ford and Michael A. Ford.

On June 8, 1909, Patrick J. Menahan verified an affidavit in the matter of the proceeding instituted by him for an adjustment of the transfer tax upon the estate of Catherine F. Menahan.   In that affidavit he set forth the personal estate of said Catherine F. Menahan as amounting to a little over $21,000, consisting of moneys in savings bank accounts of the said Catherine F. Menahan and the proceeds of certain life insurance policies made payable to her estate, also two certificates of stock of an estimated value in the aggregate of $1,680.   On file in the office of the Kings county surrogate is the report of the transfer tax appraiser which valued the personal estate of Catherine F. Menahan at $22,029.45, the report reducing these assets by the amount of debts and deductible

claims, which fixed the value of the net personal estate at $14,012.48. By agreement of counsel, stipulated upon the record before the referee to whom the proceeding was referred by the surrogate, the liabilities of Catherine Menahan's estate were fixed at $10,378.19 and her net estate at $11,651.26. There is no dispute that Patrick J. Menahan received these funds as administrator of his wife, Catherine. In the circumstances, it would have been the duty of such administrator to have judicially accounted for and turned over to Catherine Menahan's next of kin said sum of $11,651.26; but Patrick J. Menahan never accounted for these funds, and died without any proof in the record showing their disposition other than his receipt of them. He was personally entitled, as husband, to one-third of this $11,651.26, while his daughter, Mary F. Menahan Drennan, who predeceased him by about eight months, was entitled to two-thirds thereof as sole next of kin. Her two-thirds amounted to $7,607.52, and interest was charged thereon by the decree appealed from beginning February 25, 1910, the time of the receipt of the funds by Patrick J. Menahan, and that interest amounts of itself to $7,846.89, the total aggregate fund chargeable against Patrick J. Menahan's estate being $15,454.41.

Upon the death of the daughter, her husband, William Drennan, her sole legatee as well as executor of the estate named in her will, caused the institution of a proceeding against John and Michael Ford to compel them, as executors of Patrick J. Menahan, deceased, to account for this estate of Catherine's, of which it was claimed Patrick died possessed as administrator-trustee. This proceeding was on the petition of the administrator *de bonis non* of said Catherine's estate. Contemporaneously with this proceeding, John and Michael Ford petitioned for leave voluntarily to account as executors of Patrick in turn as administrator of Catherine. These two proceedings were consolidated and heard as one. It was in that order of consolidation that the matter was referred for an examination of the accounts and objections and for a report after a hearing of all questions arising upon such proceeding.

The executors Ford rendered an account which asserted that nothing had come into their possession or control belonging to the estate of Catherine Menahan, deceased, with the exception of a leasehold of " no value," and three shares of a refrigerating company stock, also of " no value." The objections of the administrator *de bonis non* of Catherine to that account bring up the single issue, whether these executors of Patrick are required by law to account for the moneys proved to have been received by their testator as administrator of Catherine Menahan.

The chief argument of the appellants is that they have not

been shown to have received assets which were of Catherine Menahan's estate and in the trusteeship of Patrick J. Menahan, their testator. They admit that Patrick J. Menahan died with assets in excess of " what he obtained from Catherine F. Menahan's estate," but that, nevertheless, Patrick J. Menahan's estate moneys are not to be impressed with a trust for the benefit of Catherine's next of kin in the absence of proof *tracing* and *identifying* the moneys. Of course, the identical moneys need not be identified, and as for the " tracing," that was established by the receipt of the money without testimony showing or tending to show that it had ever been parted with by the administrator. The statute (Surrogate's Court Act, § 257; formerly Code Civ. Proc. § 2725, superseding Id. § 2606) provides for an accounting, either voluntary or compulsory, by an executor of a deceased executor or administrator in any case where his predecessor would have been required or permitted to account as though his letters had been revoked or he had been removed by a surrogate's decree. This section has repeatedly been construed to require an accounting from an executor of a deceased executor of property of the first estate which reached the hands of the successor executor. (*Matter of Fithian*, 44 Hun, 457; *Perkins* v. *Stimmel*, 114 N. Y. 359, 370; *Matter of Moehring*, 154 id. 423, 428; Jessup-Redfield's Surrogate's Court [1925 ed.], § 579.) Of *Matter of Fithian* (*supra*) the Court of Appeals, in *Perkins* v. *Stimmel* (*supra*, 370), said: " In that case it was held that the purpose of the amendment [Code Civ. Pro. § 2606] was to develop all that the executor knew or could learn about the trust estate and in reference to it. We concur in this opinion." And the learned surrogate in *Matter of Denham* (107 Misc. 71), speaking of the statute, declared upon the authority of *Matter of Irvin* (68 App. Div. 158, 162) that the force of a decree rendered in an accounting by an executor of a deceased executor would be binding upon such executor " as to the property of the first estate which reached his hands."

The report of the transfer tax appraiser of the estate of Patrick J. Menahan was produced on the argument, and from it we learn that there is a net estate, after deducting all expenses, commissions and debts, of $145,453.47. While there is nothing shown which segregates the funds of Catherine Menahan's estate from the estate properties of Patrick J. Menahan, the finding that Catherine's assets came into the hands of Patrick gives rise to the legal presumption, in the absence of proof of payment, that they were in his hands as such administrator at the time of his death, and that they, therefore, are legally in the hands of the executors of the deceased administrator Patrick. Patrick J. Menahan's legal

liability, if living, would necessarily follow, and his executors have the same legal burden that devolved upon him. (See *Matter of Seaman*, 63 App. Div. 49, 53; *Matter of Clark*, 119 N. Y. 427, 433.)

It is urged that the decree of the learned surrogate which surcharged these executors with the amount belonging to the next of kin of Catherine Menahan deprived the legatees of Patrick J. Menahan of their rights without a hearing, in that they were not parties to the proceeding the outcome of which is the lessening of Patrick J. Menahan's estate; and the claim is made that these legatees are not bound by the finding. I am not in accord with that view, for the reason that the executors of Patrick J. Menahan were neither asked nor did they volunteer to account as executors of Patrick J. Menahan's estate, but were limited wholly to accounting for the moneys of Catherine Menahan's estate which, it is not disputed, came into their hands by virtue of their executorship of Patrick as administrator. The decree here has all the essential legal force, as against the legatees of Patrick J. Menahan, that is requisite to bind them. Their accounting as executors of Patrick's estate will show a payment under the surrogate's decree of trust funds belonging to the next of kin of Catherine and held by Patrick at his death as administrator of Catherine. Such a payment made under such circumstances cannot, it seems to me, be the subject of any question by the legatees. As to creditors, if any, of Patrick's estate we are not concerned, for the facts show that the debts of Patrick J. Menahan were but $1,842, according to the transfer tax appraiser's report; and that his *net* estate is, as before stated, upwards of $145,000. No assertion is made that the payment now directed to be made by the decree appealed from constitutes a preference as against any one else equally entitled, such as was presented in *Matter of Hicks* (170 N. Y. 195), where the testator's estate amounted to but $1,700 and the claimant beneficiary of a trust was given, by the surrogate's direction, a payment in excess of $2,100 where there were at the same time two other claims for the conversion of trust moneys amounting to $1,500. It was for this reason that Judge CULLEN (p. 199) said: " If these claims should be allowed they would stand on exactly the same footing as that of the respondent, and surely the respondent can be entitled to no preference over those creditors." And in *Lightfoot* v. *Davis* (198 N. Y. 261, 273) it was pointed out by Judge CULLEN, then chief judge, that in *Matter of Hicks* (*supra*) " the sole attempt was to gain a preference over other creditors." Such is not the case at bar.

The claim is also made that the Statute of Limitations operates as a bar in view of the fact that the daughter (now deceased) had

the right to enforce payment of her share of her mother's estate one year after her father, on February 25, 1909, had been granted letters, and that as this proceeding was not initiated until 1923, the ten-year statute, at best, applies.

That Catherine's administrator occupied a trust relation with reference to the estate of Catherine which came into his hands cannot be denied. The daughter, the sole next of kin, was the beneficiary of this trust. Patrick, having occupied such a trust relation, could not start the statute running against the right of the beneficiary to compel him to render an account until by some act sufficient for the purpose he repudiated his liability as trustee. (*Matter of Meyer*, 98 App. Div. 7; affd., on opinion below, 181 N. Y. 553.) The principle that the Statute of Limitations does not commence to run in favor of a trustee until he openly repudiates the trust and asserts and exercises individual ownership over the trust property was applied to an executor in *Matter of Ashheim* (111 App. Div. 176). (See, also, *Matter of Irvin, supra*, at p. 161.)

Under section 2606 of the Code of Civil Procedure (*supra*), which, as already set forth, provided that where an administrator dies the Surrogate's Court has the same jurisdiction, upon the petition of his successor, to compel the executor or administrator of the decedent to account which it would have had against the decedent if his letters had been revoked by a surrogate's decree, we held in *Matter of Lesser* (119 App. Div. 507), upon the authority of *Matter of Rogers* (153 N. Y. 316), that " the right of the successor of a deceased executor to compel an accounting under the provisions of this section is not barred until after the expiration of ten years from the appointment of the new administrator." Such was also the holding in *Matter of Irvin* (*supra*). There is no question in this case that any such period has elapsed since the appointment of the executors (appellants) of Patrick J. Menahan, deceased.

I am of the opinion that the decree of the Surrogate's Court of Kings county should be affirmed, with one bill of costs to the respondents, payable out of the estate.

Present — LAZANSKY, P. J., KAPPER, HAGARTY, CARSWELL and SCUDDER, JJ.

Decree of the Surrogate's Court of Kings county unanimously affirmed, with one bill of costs to respondents, payable out of the estate.