S. Samuel Di Falco, S.
The son of the decedent prays the court to take and state the account of the administrator, who was the decedent’s husband. The decedent died December 19, 1946. Letters of administration were issued to her husband on January 2, 1947. His present whereabouts are unknown. He is believed to have left America and returned to France, but efforts to locate him have proved unavailing. The order directing him to file his account bound him without service thereof (Surrogate’s Ct. Act, § 260) but inasmuch as he has no actual knowledge of the order, no accounting was filed by him. The surety on the administrator’s bond is a party respondent and opposes the application to take and state the account.
It is unfortunate that so many of the records pertaining to this estate have been destroyed. The first defense of the surety is that the petitioner executed a release of the administrator. However, all of the surety’s file in this estate has been destroyed, and it cannot prove the execution of the release. The petitioner denies signing any release. The records of the bank where the estate account and the business account were kept have likewise been destroyed, and it is not possible to establish the deposits in and the payments from these accounts.
It is conceded that the decedent’s gross estate amounted to $10,343.47 as stated in the New York estate tax return. The petitioner executed a waiver and renunciation at the time the petition for letters of administration was made. He testified that at that time his stepfather told him that his mother’s estate ‘1 was valued at several hundred dollars; that was all that she had.” He testified that his stepfather further advised him that ‘1 these moneys would be used to pay for her funeral expenses and medical and hospital payments.” The petitioner said that *812 ho did not question Ms stepfather any further about the estate assets. Some years later the petitioner failed to receive payment of sums due him from his stepfather in connection with another matter, and at that time, in 1958, he consulted an attorney with respect to the collection of that obligation. He testified that he then learned for the first time the gross value of his mother’s estate.
The liabilities and expenses listed in the estate, tax proceeding total $1,696.69. This sum is conceded as a credit in the account. The petitioner testified that he received four United States Bonds which he believes were in the total face amount of $200. These bonds had been registered in the name of the decedent, payable to the petitioner on her death. The estate tax proceeding lists United States Savings Bonds in the sum of $225, without mentioning the form of their registration. By written stipulation it is conceded that the bonds listed in the stipulation are all of the bonds payable to or received by the petitioner, “namely, $200 in face amount rather than $225 in face amount as stated in Schedule A of the estate tax proceedings therein.” This stipulation appears to be intended to dispose of the credit for distribution of the bonds, although its meaning is not clear beyond possible dispute. The petitioner also received a watch decorated with diamonds that had belonged to his mother. The estate tax return lists only one watch, with a value of $25. The administrator should, therefore, be credited with the distribution of $65 representing the value of the watch.
Moreover, the record shows that certain business property had been distributed by the administrator. The petitioner’s testimony as to his business transactions with his stepfather is very vague. The decedent had conducted a small business which she had inherited from her mother, which is described as an embroidery business. The petitioner said that he did ask his stepfather what would happen to the business, and he was told that the person who had been running it while the decedent was ill, would continue the conduct of the business. The petitioner said that several months later his stepfather told him that the person had not been able to conduct the business and that it was closed. The petitioner testified that he had been told that the business produced enough to pay salaries, but it was not making any money and that it was deemed better to close the business. However, it appears from an exhibit in the record that the petitioner had signed a certificate for doing business under the name which the business had used for some period. That certificate had been signed by the petitioner and the administrator, both acting as individuals, and it lists the two of them *813 as successors in interest of the business. It, therefore, clearly appears that the petitioner had received assets of the business as one of the successors in interest, and that he had acquiesced in the conduct of the business and in the subsequent closing of the business. The business could not have been continued without the fixtures and tangible assets listed in the estate tax return as valued at $715. These assets must be deemed to have been distributed to the two business associates, and the sum of $715 must also be allowed as a credit to the administrator.
The business was presumably carried on under the supervision of Pierre Contresty, but not in his status as administrator of this estate. The two distributees patently agreed to carry on the business as individuals. To do so, a distribution of certain assets by the administrator was a prerequisite. When a distribution has in fact been made, this court no longer has jurisdiction to supervise the agreements made by the distributees between themselves for the use and disposition of their inheritance.
The surety contends that the bank account which is listed in the tax return as “ the business banking account under the name of Louise H. Eemy Co.” must also be regarded as having been distributed with the business assets. The estate tax proceeding indicates that the bank account was in the sum of $4,261.13 at the time of the decedent’s death. All records pertaining to that bank account have been destroyed and there is no basis for finding that it was in fact distributed and used in the business. The burden of .proving the credit is upon the one who asserts it. The distribution of the bank account to the business associates was not a matter of absolute necessity. The decedent owned the business and her administrator took title to her property. The business could have been carried on without additional capital and there is no basis in this record for finding that the bank account had in fact been distributed.
It is conceded that the administrator was entitled to an exemption of $300 under section 200 of the Surrogate’s Court Act, and also to a credit of $1,141.40 for funeral expenses.
After deducting the credits hereinabove allowed from the gross assets, the difference represents the net distributable estate. The petitioner’s share is two thirds of that sum.
The petitioner further demands a surcharge of 6% interest on his share from a date seven months after the issuance of letters of administration. There is no hard and fast rule governing the rate of interest with which a fiduciary should be surcharged, the matter usually resting in the discretion of the court, taking into account the nature of the trust breach and the degree of *814 fault of the fiduciary. (2 Scott, Trusts [2d ed.], pp. 1533-1539; Restatement, Trusts, § 207; Annotation, Interest Chargeable Against Fiduciaries, 156 A. L. R. 936; 112 A. L. R. 833; 55 A. L. R. 950; 37 A. L. R. 447; Ellis v. Kelsey, 241 N. Y. 374; King v. Talbot, 40 N. Y. 76, 95; Matter of Ryan, 181 Misc. 566, 586, affd. 264 App. Div. 704, affd. 291 N. Y. 376.)
On the basis of the present record, it seems to the court that the administrator should be chargeable with interest at 6% on the petitioner’s share from August 2,1947.
The respondent surety company interposed several affirmative defenses to the request that the Surrogate take and study the account. The defense of release has not been proved. The defense of the Statute of Limitations is overruled. The statute begins to run from the time that the administrator openly repudiated his obligation to administer the estate (Matter of Jacobs, 257 App. Div. 28; Matter of Menahan, 224 App. Div. 139; Matter of Anderson, 122 App. Div. 453, 455). The administrator did not openly repudiate his fiduciary obligations at any time, insofar as this record shows. The petitioner never knew of any breach of fiduciary duties prior to the time petitioner examined the court records. The surety has abandoned the defense that there is insufficient in the record to justify the court in stating the account. The additional defense of loches was added at the hearing, by amendment of the answer. Laches has been defined as “ ‘ such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.’ ” (2 Pomeroy, Equity Jurisprudence [5th ed., Symons], § 419, pp. 171-172.) It is true that the petitioner made no examination of the court records for a period of more than 10 years and it is true that the records of the surety and of the bank had been destroyed in the meantime. However, in view of the testimony of the petitioner that he had discussed the matter with the fiduciary and had been advised that there were no funds available over and above debts and expenses, and in view of the relationship of the parties, the failure of the petitioner to make an independent investigation cannot be said to represent lack of reasonable diligence or acquiescence in the transactions of the administrator. It must be remembered that the present proceeding is one to take and state the account of the fiduciary and not a proceeding against the surety on its bond. Under the circumstances, the court holds that the delay of the petitioner is not a bar to the present compulsory accounting proceeding.