Fuld, J.
Whether the joint will of Mr. and Mrs. Mottek constitutes a contract by each of the testators to dispose of his or her respective estate in the manner specified in such will is the question presented by this appeal.
Ludwig Louis Mottek and his wife Margaret came to this country from Germany in 1941. Some 5 years later, in March of 1946, they executed a holographic will, written in German, which bore the caption “Joint Testament”. After opening with the recital that Ludwig is married to Margaret and that there are two children, Helen Arnhym and Ilselotte (also Ilia) Rich, the will continues in this way:
“We are not restricted in the disposition of our property and we are in full possession of our senses.
“2. Under this premise, we spouses mutually appoint ourselves heirs, if neither one of us remarries.
“In the latter case there would have to be a prior settlement with our children. Therefore the survivor of us is the sole heir of the predecedent, whereas our children are appointed heirs of the last decedent spouse.
*93 “3. If we should obtain property from Germany, Ilselotte Rich shall receive first $3000. (three thousand), in order to put both daughters in equal position.”
Ludwig signed first and, following his signature and those of the attesting witnesses, there is this sentence:
“ The foregoing Testament of my husband Ludwig Louis Mottelc shall also be deemed to be mine.”
And this is followed by Margaret’s signature and those of the same attesting witnesses.
Ludwig died in August of 1950 and his will was admitted to probate. In 1955, on October 8, his widow Margaret revoked the will which she had executed with, her husband in 1946 and made a new one. In this latter will, after providing for gifts of $2,500 to each daughter, Margaret created a trust, the income of which was to go to each daughter in equal shares for life. The remainder of the share of one daughter was left to her children, while the remainder of the other daughter’s share went, ultimately, to the children of Margaret’s brother. Margaret died in 1957 and the 1955 will was admitted to probate.
Margaret was survived by both Helen Arnhym and Ilia Rich, and they brought this action to impress a trust upon the property left by their mother and to have it distributed to them in accordance with the provisions of the 1946 joint will. Following a trial, the court reached a decision opposed to the plaintiffs ’ position and dismissed the complaint. The Appellate Division, by a divided vote, affirmed the resulting judgment.
The applicable principles are clear and settled. Two persons may validly agree to dispose of their estates in a particular way and may embody their agreement in mutual wills or a joint testament. During the lifetime of either party, each may, of course, use his property as he pleases, “ short of making a different testamentary disposition or a gift to defeat the purpose of the agreement”. (Rastetter v. Hoenninger, 214 N. Y. 66, 73.) "Whether or not one party may revoke by notifying the other during their joint lives, we need not consider or decide. However, ‘ after the agreement [has] been executed by one dying without making a different testamentary disposition of his property and after the acceptance by the other of the bene *94 fits of the agreement, it [becomes] obligatory upon the latter and enforceablé in equity upon his death.” (Rastetter v. Hoenninger, 214 N. Y. 66, 73.) In other words, if the survivor of the two testators breaches the contract by executing a will other than that agreed upon, the courts will compel his executors to “perform the contract”. (Tutunjian v. Vetzigian, 299 N. Y. 315, 319; see, also, Hermann v. Ludwig, 229 N. Y. 544.) Indeed, as we observed in the Tutunjian case (299 N. Y., at p. 319), “ to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other 1 would be a mockery of justice ’. (Mutual Life Ins. Co. v. Holloday, 13 Abb. N. C. 16, 24.) ”
The mere existence of a joint testament may not in and of itself serve to establish the agreement, but the lang*uage used by the testators in their will or the circumstances surrounding its making may suffice to spell out a contract, particularly in the case of a joint will executed by husband and wife or by parents interested in providing for their children. (See, e.g., Tutunjian v. Vetzigian, 299 N. Y. 315, 319, supra; Hermann v. Ludwig, 229 N. Y. 544, supra; Rastetter v. Hoenninger, 214 N. Y. 66, 72, supra; cf. Oursler v. Armstrong, 10 N Y 2d 385.)
In the case before us, the terms of the will impose a clear obligation on the part of husband and wife to provide, at death, first for each other and then for their children. They labeled their will a “ Joint Testament ” and, using the plural “we ” and “ our ” throughout, declared that “ We are not restricted in the disposition of our property ” and that “ our children are appointed heirs of the last decedent spouse ”. Language such as this, this court remarked in both Tutunjian (299 N. Y. 315, 320) and Rastetter (214 N. Y. 66, 72), “imports the joint disposition of the collective property of both, not the independent disposition by each of his own”. Moreover, the arrangement giving one daughter an extra $3,000 to put both ‘ ‘ in equal position ’ ’ likewise seems consistent only with an agreement by the parties to provide unconditionally for their daughters upon the death of the surviving spouse.
The will does, it is true, use the term “ sole heir” in connection with the surviving spouse and omits the word “ sole ” in referring to the children as “ heirs ”. But this does not, in *95 our opinion, indicate an intention to place the survivor in a more favorable position than the children or negate the existence of a contractual obligation. Since, under the laws of intestacy in this country (Decedent Estate Law, § 83)—and apparently in Germany (see I Manual of German Law [British Foreign Office, 1950], p. 185) —the children, as well as the widowed party, are the heirs of the deceased spouse, the parties undoubtedly intended, by the use of the adjective “ sole ”, to make more emphatic the children’s exclusion from the estate of the “predecedent” spouse at his death.
In point of fact, in the dispositive language of the testament, it will be observed that the word “ heir ” is not qualified by “sole”; that portion merely recites, “we spouses mutually appoint ourselves [that is, each other] heirs ”. The word “ sole ” is used only in what may be termed the narrative part of the will, namely, “ Therefore, the survivor of us is the sole heir of the predecedent ”.
The word “sole” does no more or less than denote the singular rather than the plural. In the present context, it neither enlarges nor strengthens the comprehensive and meaningful term £ £ heirs ’ ’. In short, there is no difference, at least in the present instance, between an “ heir ” and a “ sole heir ”, and the adjective “ sole ” would have been even less meaningful and, certainly, superfluous, if used with respect to a class such as “ our children ”. Moreover, this provision for the children, following as it does immediately upon the reference to the possible remarriage of the survivor, is strong indication that each party intended to bind the other to leave his property to the children whether he remarried or whether he did not.
Nor does the use of the transitional word “whereas” (in German, “ wahrend ”) after the provision for the surviving spouse and before the provision for the children weaken this conclusion. The word does not necessarily imply antithesis; rather, we would say, it differentiates, without suggesting contrariety. If, though, there is any antithesis in the present context, it is simply as to times and sequences; it does no more than refer to the different times at which the surviving spouse and the children will come into full enjoyment of the estate.
Thus, the will itself reflects and establishes a contract between the testators to dispose of their respective estates in the manner *96 specified.[1] The plaintiffs are, therefore, entitled to their mother’s entire estate, unless releases which they signed at the time of their father’s death stand in the way. These are the circumstances surrounding the execution of the releases. When Ludwig died, the daughters were advised, in substance, that it would be easier for their mother to obtain certain funds owed their father if they signed instruments of release entitling her to deal Avith their father’s estate in Germany. They agreed to do so and, accordingly, each daughter released and assigned to her mother “ all of my right, title and interest * * * in and to any and all property * * * Avhereof my father, Lud-Avig Mottek, died seized or possessed, that I noAv or hereafter may claim * * * by virtue of any of the terms, provisions, conditions and trusts contained in any Last Will and Testament of my said father * * * or under any intestacy laws of the State of New York or of any other state or country.” The very wording of the releases indicates that the daughters were merely giving up all claims to their father’s estate under the terms of his Avill. Nothing in the documents suggests or provides for a forfeiture of their rights under their mother’s will, nor does it release her from her contractual obligation to leave them her estate. It is manifest that, although there may have been some moral inducement for the plaintiffs to forego all claims under the will of their father for the benefit of their mother — Avhether it was to give up the statutory portion in the father’s estate to Avhich they might have been entitled under German law or otherAvise to expedite the administration of his estate in Germany— there was no such inducement for them to forego their rights under their mother’s will.
In sum, then, Margaret Mottek, having agreed with her husband to leave her estate to her daughters, was under a contractual obligation to do so, and it is immaterial that the later Avill which she made in violation of her agreement has been admitted to probate.
*97 The judgment of the Appellate Division should be reversed, with costs in all courts, and the relief demanded in the complaint granted.

. In the vieiv thus taken, it is unnecessary to consider the propriety of the trial judge’s ruling which excluded the testimony of a German law expert, proffered by the plaintiffs, with respect to German law and custom, in order to prove both the “ background ” and “ intent ” of the Motteks and the meaning which would be accorded in Germany to a “ Joint Testament” such as they executed.