ESTATE OF JAMES MEAD VERMILYA, DECEDENT, GEORGE H. VERMILYA, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1341–62.    Filed November 20, 1963.

*John A. McHardy, Jr.*, for the petitioner.
*Robert F. Cunningham*, for the respondent.

OPINION

FAY, *Judge:* The respondent determined a deficiency of $1,265.44 in the estate tax of the petitioner. The only issue for decision is whether the petitioner is entitled to the estate tax marital deduction with respect to the property passing from the decedent to his wife under the decedent's will.

All of the facts are stipulated and are found as stipulated.

The petitioner, the estate of James Mead Vermilya, by its executor, George H. Vermilya, filed its Federal estate tax return with the district director of internal revenue, St. Paul, Minn.

The decedent during his lifetime was married to Anna Vermilya. On August 8, 1957, decedent and Anna executed a joint and reciprocal will which provided as follows:

### JOINT LAST WILL AND TESTAMENT

I, Mead Vermilya, and I, Anna Vermilya, husband and wife, and each of us, and both of us, being of sound mind and memory, and realizing the uncertainty of life, and the certainty of death, and wishing to direct how our property shall be distributed on the death of each of us, and both of us, do hereby make, publish and declare this to be our Last Will and Testament, and do hereby revoke all former wills and codicils by us made.

### ARTICLE I.

It is the will of each of us, and of both of us, that all our just debts and funeral expenses, and costs of administration be paid as soon after our death as practical.

### ARTICLE II.

It is the will and desire of each of us, and the mutual wish and desire of both of us that on the death of either of us all the property of the deceased party, whether real, personal or mixed shall become the property of the surviving party in fee simple and absolute.

In furtherance of this intention, I, Mead Vermilya, and I, Anna Vermilya, and each of us for ourselves do hereby give, devise and bequeath to the survivor of us all of the property, both real and personal, of which I may die seized, possessed or entitled, to have and to hold in fee simple and absolute.

### ARTICLE III.

After the death of both of us, and of the survivor of us, we give, devise and bequeath to Kenneth Majerus, an undivided one-half interest in and to our home farm, being that parcel of land in the County of Olmsted, and State of Minnesota, described as follows, to-wit:

The Southwest Quarter of the Southeast Quarter (SW¼ of SE¼) of Section Seven (7) ; the North Half (N½) and the Southwest Quarter of the Northeast Quarter (SE¼ of NE¼) [sic] of Section Eighteen (18), and the Northwest Quarter of the Northwest Quarter (NW¼ of NW¼), of Section Seventeen (17), all in Township One Hundred Seven (107), North, Range Eleven (11) West, in fee simple.

### ARTICLE IV.

After the death of both of us and of the survivor of us, we give, devise and bequeath to George H. Vermilya, twenty (20) shares of the capital stock of Vermilya Bros. Incorporated.

### ARTICLE V.

After the death of both of [us] and of the survivor of us, we give, devise MEAD VERMILYA, ANNA VERMILYA, and bequeath to Albert Staege, seven and one-half (7½) shares of the capital stock of Vermilya Bros. Incorporated.

### ARTICLE VI.

After the death of both of us, and of the survivor of us, we give, devise and bequeath to our nephew, Hugh Vermilya, five (5) shares of the capital stock of Vermilya Bros. Incorporated.

ARTICLE VII.

After the death of both of us and of the survivor of us, we give, devise and bequeath to the Little Valley Cemetary [sic] Association the sum of One Thousand ($1,000.00) Dollars.

ARTICLE VIII.

After the death of both of us and of the survivor of us, we direct that our executor liquidate and convert into cash all the assets remaining after the payment of the specific legacies hereinbefore set forth in Articles I to VII inclusive, and that of the sum so realized, we give, devise and bequeath as follows:

(a) To Avis Egertson, our niece, one-third ($\frac{1}{3}$) thereof;
(b) To Leonard Peterson, our brother, one-sixth ($\frac{1}{6}$) thereof;
(c) To Helen Mortenson, our sister, one-sixth ($\frac{1}{6}$) thereof;
(d) To Louie Peterson, our brother, one-thirtieth ($\frac{1}{30}$) thereof;
(e) To Severt Peterson, our brother, one-thirtieth ($\frac{1}{30}$) thereof;
(f) To Pearl Franklin, our sister, one-thirtieth ($\frac{1}{30}$) thereof;
(g) To Murray Sorenson, our nephew, one-thirtieth ($\frac{1}{30}$) thereof;
(h) To Betty Boelter, our niece, one-thirtieth ($\frac{1}{30}$) thereof;
(i) To Doris Trapp, our niece, one-thirtieth ($\frac{1}{30}$) thereof;
(j) To Mary Vermilya, our sister-in-law, one-thirtieth ($\frac{1}{30}$) thereof;
(k) To Hugh Vermilya, our nephew, one-thirtieth ($\frac{1}{30}$) thereof;
(l) To Shirley Lines, our niece, one-thirtieth ($\frac{1}{30}$) thereof;
(m) To Carol Smith, our niece, one-thirtieth ($\frac{1}{30}$) thereof.

If any of the devisees named, in this Article VIII, shall have predeceased the survivor of us, leaving children said children and the children of any deceased children shall receive the share their parent would have taken by representation, and should any of said devisees named in this Article VIII have predeceased the survivor of us leaving no children, the share which such devisee would have taken shall be divided among the remaining devisees named in this Article VIII, in the proportion in which they participate hereunder.

ARTICLE IX.

We make, constitute and appoint our brother, George H. Vermilya to be executor of this our Last Will and Testament.

In the event he should fail to survive the survivor of us, we make, constitute and appoint Alfred A. Burkhardt, of Plainview, Minnesota, executor of this our Last Will and Testament.

On February 10, 1959, with the will still in effect, James died. On February 21, 1959, Anna petitioned the Probate Court of Wabasha County, Minn., to admit this will to probate. After a hearing, the will was admitted to probate on March 30, 1959. George H. Vermilya, who was appointed executor in the will, was issued letters testamentary authorizing him to act as executor on April 6, 1959.

At the time of his death, James owned the following property, valued as of that time:

1. The West one-third (W$\frac{1}{3}$) of the South three-fourths (S$\frac{3}{4}$) of the Southeast Quarter (SE$\frac{1}{4}$) of Section Seventeen (17), Township One Hundred Eight (108) North, Range Eleven (11) West, Wabasha County, Minnesota. The Southwest Quarter of the Southeast Quarter (SW$\frac{1}{4}$ of SE$\frac{1}{4}$) of Section Seven (7),

the Northwest Quarter of the Northwest Quarter (NW¼ of
NW¼), Section Seventeen (17), the West Half of the Northeast
Quarter (W½ of NE¼) and the Northeast Quarter of the North-
east Quarter (NE¼ of NE¼) of Section Eighteen (18), all in
Township One Hundred Seven (107), North, Range Eleven (11)

| | |
|---|---:|
| West, Olmsted County, Minnesota | $46,000.00 |
| 2. 65 shares of common stock of Vermilya Brothers, Incorporated | 20,930.00 |
| 3. Other stocks and bonds | 767.00 |
| 4. Jointly owned property | 7,304.88 |
| 5. Miscellaneous personal property | 13,732.00 |
| Total | 88,733.88 |

The estate incurred and claimed deductible funeral and administra-
tive expenses in the amount of $1,720.49.

On July 11, 1959, the executor filed a final accounting for the estate.
After a hearing was held on this final accounting, an order of distribu-
tion was entered by the Probate Court of Wabasha County on Sep-
tember 23, 1959, vesting the entire estate in Anna in fee simple.

On its estate tax return the estate claimed a marital deduction in
the amount of $43,506.69, which was one-half of the adjusted gross
estate. The respondent determined that the estate was not entitled to
a marital deduction for the property passing to Anna under the will,
and accordingly disallowed the deduction claimed except for the
amount of $7,304.88, which was the value of joint property passing to
Anna.

The respondent contends, on two separate grounds, that the dece-
dent's wife received only a "terminable interest" in the property she
received under the decedent's will, and thus the petitioner is not en-
titled to claim the marital deduction with respect to it. This conten-
tion is based on section 2056(b)(1) of the Internal Revenue Code of
1954, which provides:

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an
event or contingency, or on the failure of an event or contingency to occur, an
interest passing to the surviving spouse will terminate or fail, no deduction
shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than
an adequate and full consideration in money or money's worth) from the
decedent to any person other than such surviving spouse (or the estate of
such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns)
may possess or enjoy any part of such property after such termination or
failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such
deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant
to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

As the first ground for the respondent's contention, he urges that the decedent's will grants only a life estate to the surviving spouse in the property passing under it.

In determining what estate was created in the surviving spouse by the will, we must look to State law, *Morgan* v. *Commissioner*, 309 U.S. 78 (1940). It is true that Minnesota, in which the decedent was domiciled at his death, applies the general rule in construing wills that the intent of the testator governs. *In re Freeman's Estate*, 151 Minn. 446, 187 N.W. 411 (1922). Furthermore, the intent of the testator, as determined by a reading of the entire will, may control in spite of specific language in the will indicating a contrary result. *In re Quinlan's Estate*, 233 Minn. 35, 45 N.W. 2d 807 (1951). However, Minnesota cases lead us to conclude that the Minnesota courts would hold the will granted a fee simple absolute title to the surviving spouse. *In re Wadsworth's Estate*, 176 Minn. 445, 223 N.W. 783 (1929); *In re Hasey's Estate*, 192 Minn. 582, 257 N.W. 498 (1934). Since we reach the same conclusion as the Minnesota Probate Court, we need not consider the effect of that court's decree of distribution.

As a second ground for the respondent's contention, he urges that the joint and reciprocal will evidences a contract between the decedent and his spouse that each would leave his property on death in the manner provided in the will. Thus, he says, all property which the surviving spouse received from the decedent was received subject to a contract duty to will it in a specific way. Therefore, he would conclude that all of the interests in property received by the surviving spouse under the will were "terminable interests" within the meaning of section 2056(b)(1) of the Code and, thus, not qualified for the marital deduction. He bases this latter conclusion on section 20.2056 (e)–2(a), Estate Tax Regs., which provides:

The deduction may not be taken with respect to a property interest which passed to such spouse merely as trustee, or subject to a binding agreement by the spouse to dispose of the interest in favor of a third person. * * *

The States are divided on the question whether the existence of a contract can be inferred from a joint and reciprocal will alone. We find no Minnesota case settling the matter in that jurisdiction.

Contracts to dispose of property in a certain way are recognized as lawful in Minnesota. *Mosloski* v. *Gamble*, 191 Minn. 170, 253 N.W. 378 (1934). The case of *Mosloski* v. *Gamble, supra*, explains the effect of these contracts under Minnesota law. Where a promisor under such a contract makes a will carrying out the terms of the contract, the will remains revocable. Whether the will is revoked or not, the

property owned by the promisor at his death will pass through his probate estate. If no effective will is left carrying out the terms of the contract, the beneficiary under the contract may bring a collateral action in an equity court and have a constructive trust impressed upon the property which is subject to the contract.

If, as the respondent contends, the joint will here is contractual as well as testamentary, then the terms of the contract would be found in the provisions of the will. In the will each spouse leaves everything absolutely to the surviving spouse. By the remaining testamentary provisions the last spouse to die leaves all property owned at death to certain collateral relatives of each testator. Thus, if the will evidences an agreement, that agreement was as follows: That in return for the reciprocal gifts and for each other's promise each spouse agreed to leave his property, at death, in the manner provided in the joint will. This agreement would apply to two classes of property. It would apply on the one hand to specific items of property referred to in the joint will, and on the other hand, to all other property of the last spouse to die, whether acquired from the other spouse or not. Thus, the agreement was to make certain specific devises and certain general devises of all other property owned at death. We point out this dichotomy because, as we shall show, promises to leave specific property and promises to leave all property owned at death are treated differently.

Where a contract is made to devise specific property, a conveyance of that property by the promisor during his lifetime is a breach of contract. *Wagar* v. *Marshburn*, 241 Ala. 73, 1 So.2d 303 (1941); *Eikmeier* v. *Eikmeier*, 174 Kans. 71, 254 P.2d 236 (1953); *Teske* v. *Dittberner*, 70 Neb. 544, 98 N.W. 57 (1903); *Young* v. *Young*, 45 N.J. 27, 16 Atl. 921 (1889); *Kastell* v. *Hillman*, 53 N.J. 49, 30 Atl. 535 (1894); *Harmon* v. *Aughtry*, 226 S.C. 371, 85 S.E.2d 284 (1955); 1 Page, Wills, sec. 10.23, p. 491 (Bowe-Parker). If the conveyance is to a bona fide purchaser who takes legal title for value and without notice of the contract, the conveyance cannot be set aside. *Robinette* v. *Olsen*, 114 Neb. 728, 209 N.W. 614 (1926); *White* v. *McKnight*, 146 S.C. 59, 143 S.E. 552 (1928). If, however, the grantee of such a conveyance did not give value or had notice of the contract at the time of the grant, the conveyance may be set aside. *Young* v. *Young*, *supra*.

The situation is different in the case of a contract to devise some general class of property such as "all property owned at death." Under such a contract, the promisor may deal with the property involved as he wishes and may even make gifts if they are reasonable in amount and not in fraud of the rights of the contract beneficiary. *Noble* v. *Metcalf*, 157 Ala. 295, 47 So. 1007 (1908); *Powell* v. *McBlain*, 222 Iowa 799, 269 N.W. 883 (1936); *Rastetter* v. *Hoenninger*, 214

N.Y. 66, 108 N.E. 210 (1910); *Hamilton* v. *Hamilton*, 269 S.W. 2d 491 (Tex. 1954), affd. 280 S.W. 2d 588 (Tex. 1955); *Hatcher* v. *Sawyer*, 243 Iowa 858, 52 N.W. 2d 490 (1952); 1 Page, Wills, sec. 10.23, p. 492 (Bowe-Parker).

Having considered the rights conferred on the contract beneficiary by each type of contract, we must now determine whether property received subject to such contracts should be considered as a "terminable interest" under the language of section 2056(b) of the Internal Revenue Code of 1954.

The first requirement of a "terminable interest" under section 2056 (b) is that "an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse)." Under a contract to devise specific property, the rights of the contract beneficiary might be considered sufficiently extensive to justify a conclusion that the beneficiary has received an interest in the property at the time the contract is made. We believe that it is to property subject to this type of contract that the provision of the Estate Tax Regulations, sec. 20.2056 (e)–2(a), *supra*, upon which the respondent relies, refers.

However, in the case of a contract to leave all property owned at death, it cannot be said that any interest in property is received by the beneficiary upon the making of the contract. This type of contract does not apply to any specific property. Such property as the promisor has at any time during his lifetime may be used up or conveyed away by the time the promisor is ultimately required to perform. A contract of this kind may operate actually only on property acquired by the promisor after he has made the contract, as, for example, in the case where the promisor had no property at the time the contract was made. Therefore, during the lifetime of the promisor the beneficiary cannot be considered as having an interest in the property. *Noble* v. *Metcalf, supra; In re Lage*, 19 F. 2d 153 (1927); see also *Clarke* v. *Treasurer and Receiver General*, 226 Mass. 301, 115 N.E. 416 (1917). Thus, if a decedent leaves property to his spouse, that property is not disqualified for the marital deduction as a "terminable interest" merely because it would, if held until the death of the second spouse, be subject to a contract to leave all property owned at death in a certain manner.

In applying these rules to the circumstances before us, we find that provision was made for a specific devise of a one-half interest in certain lands. It appears that at the death of the decedent he owned other land in addition to that mentioned in the will. However, even if half of the value of all of the land he owned at death was excluded from the marital deduction, there would still remain a sufficient deduction to eliminate any estate tax upon the estate.

For the same reason, it is unnecessary for us to decide whether the specific gifts in the will of shares of stock in Vermilya Brothers, Inc., were intended to constitute specific devises or general devises. Even if the value of the 32½ shares of stock mentioned in the will was to be excluded from the marital deduction, no tax would result.

No other property is specifically mentioned in the will. Thus, all other property received by the decedent's spouse could be subject only to a general promise to leave all the property owned by her at her death in the manner provided in the will. We hold that such other property qualifies for the marital deduction.

Finally, it might be pointed out that our case here differs from *Estate of Emmet Awtry*, 22 T.C. 91 (1954), revd. 221 F. 2d 749 (C.A. 8, 1955). In that case the will specifically granted a life estate only to the surviving spouse, whereas here the will grants a fee simple estate. This case also differs from *Estate of Gust Marion Peterson*, 23 T.C. 1020 (1955), reversed per curiam 229 F. 2d 741 (C.A. 8, 1955). In the *Peterson* case we held that the will granted a life estate only to the surviving spouse under the laws of Nebraska. Here we have a case arising in Minnesota, and under Minnesota law it appears clear that the surviving spouse would be held to receive a fee simple estate. Lastly, the interest given the surviving spouse here differs from the life estate with power of invasion with which we dealt in *Estate of Francis F. Field*, 40 T.C. 802 (1963). There we held a life estate with power of invasion disqualified for the marital deduction because the surviving spouse could not appoint to herself or her estate. Here the surviving spouse received the full fee simple title to the property involved, and, if she owns it at her death, it will pass through her probate estate.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

WITHEY, *J.*, concurring: I concur in the result herein in view of the wording of Article II of the will. In the first paragraph it is unequivocally stated that the intention of the mutual testators is that all property of the deceased testator "shall become the property of the surviving party in fee simple and absolute" and the bequest contained in the second paragraph of Article II to the effect that all such property shall go to the survivor "to have and to hold in fee simple and absolute" is in pursuance of that clearly stated intention. Differentiation in this opinion between property bequeathed generally and property which is devised specifically is therefore, in my view, unwarranted. With an intention so clearly stated and so clearly carried out I cannot conclude but what, should it have been necessary for the taxpayer herein or

234

should she have merely desired to use all of the property passing to her from her deceased husband under their mutual will a Minnesota court would not have prevented her from doing so.

BRUCE, FISHER, and MULRONEY, *JJ.*, agree with this concurring opinion.