ESTATE OF EDWARD N. OPAL, DECEASED, MAE OPAL, EXECUTRIX, NOW BY REMARRIAGE KNOWN AS MAE KONEFSKY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4144–66. Filed February 5, 1970.

*Louis J. Opal*, for the petitioner.
*John B. Murray, Jr.*, for the respondent.

# 156

**OPINION**

Petitioner and her husband executed a joint last will and testament, leaving Edward's property to Mae. Respondent contends that the property interest passing to Mae from Edward does not qualify for the marital deduction under section 2056.[2]

He argues that: (1) Under New York law Mae is contractually bound to devise and bequeath to Warren the unconsumed portions of the property which came to her from Edward; and that (2) because of the limitations imposed on the use of the property by reason of this contractual obligation, her interest in the property is in effect a life

---

[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

\*         \*         \*         \*         \*         \*         \*

(5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a) be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

estate with broad powers of invasion that do not include an ability to give it away by an inter vivos gift which would defeat the purposes of the contract; and that such an interest fails to qualify for the marital deduction, since it is a terminable interest under section 2056 (b) (1) which does not qualify as a life estate with a power of appointment under section 2056 (b) (5).

Petitioner, on the other hand, contends that she received "a fee simple and absolute" under the will and is not contractually bound to devise the property to her son.

At the outset, an interpretation of the joint will is necessary in order to ascertain the nature of the property interest passing to Mae and the existence or nonexistence of a contractual obligation to devise to her son any property received from Edward. The law of New York is determinative of that interest. *Estate of Julius Selling*, 24 T.C. 191, 197 (1955).

The introductory language of the first paragraph of the will explicitly states that the dispositions are irrevocable and that each is in consideration of the other. In the second provision, clause C, Mae is to devise her estate to Warren. Necessarily that estate will include any remaining portions of the property received from Edward, as well as her own property. No indication is evidenced in clause C that property received from Edward is to be treated any differently from Mae's. If any part of his estate remains at her death it will be in her estate, and it is the devising of Mae's estate to the son which the introductory paragraph makes irrevocable. Hence, it appears that Mae is contractually bound to devise Edward's estate to the son at her death.

Petitioner contends, however, that the use of the phrase "absolutely and forever" in clause B of the second provision of the will precludes a finding of a contractual obligation to devise the property received from Edward and requires a finding that Mae received "a fee simple and absolute" in her husband's estate. She refers us to two New York cases which hold that no contract existed to devise property received from a decedent when the dispositive provisions of the will under consideration used language of absolute gift in devising property to the survivor. *Matter of Zeh*, 24 App. Div. 2d 983, 265 N.Y.S. 2d 257, affirmed on opinion of lower court 18 N.Y. 2d 900 (1965), 223 N.E. 2d 43 (1966); *Matter of Silverman*, 43 Misc. 2d 909, 252 N.Y.S. 2d 587 (Sur. Ct. 1964).

We have carefully examined *Silverman* and *Zeh* and find them distinguishable. The issue before the court in *Zeh* was whether a contract to devise could be implied from the format of the will and the wording of the dispositive provisions. There was no independent contractual language in the will nor a contemporaneous agreement to

make the will irrevocable. The provisions therein under consideration are as follows (24 App. Div. 2d at 984, 265 N.Y.S. 2d at 259) :

"1. We, or said survivor, give and devise all of the real property together with all buildings thereon and equipment used in connection therewith, of which we, or said survivor, may die seized and/or possessed or in which we, or said survivor, may have any interest or to which we, or said survivor, may be entitled at the time of our deaths, or at the death of said survivor, to our son, WILLIAM ARTHUR ZEH, to him to have and to hold, his heirs and assigns absolutely and forever.

"2. We, or the survivor of us, give and bequeath unto our children FANNIE REBECCA HOWELL and WILLIAM ARTHUR ZEH, share and share alike, all of the personal estate of which we, or said survivor, may die possessed, including by way of illustration but not of limitation all furniture and furnishings, jewelry, trinkets and any and all other articles of like nature, together with all moneys in banks, bank deposits, stocks, bonds, mortages and moneys due or to become due."

The court held that no contract existed, basing its result on the New York rules that (1) clear and convincing evidence is necessary to establish a contract to make a will irrevocable, *Oursler* v. *Armstrong*, 10 N.Y. 2d 385, 179 N.E. 2d 489 (1961), and (2) in order to cut down an absolute gift of real or personal property the latter part of the will must evidence a clear intention to do so by use of words definite in their meaning. *Tillman* v. *Ogren*, 227 N.Y. 495, 505, 125 N.E. 821–824 (1920). Likewise, in *Matter of Silverman, supra*, the will contained no contractual language and the court concluded that there was no contract, principally because of the term "absolutely" which modified the disposition to the survivor. Significantly, the court there stated:

There is here no independent contract and the provisions of the will itself negate the existence of any contractual obligation * * * to dispose of any or all of the property so received in any particular manner.

In the instant case there is independent contractual language which, we think, provides the "clear and convincing" evidence necessary to establish the contract and override the phrase "absolutely and forever."

The case of *Ralyea* v. *Venners*, 155 Misc. 539, 280 N.Y. Supp. 8 (Sup. Ct. 1935), more closely resembles the situation herein under consideration. The spouses there executed an agreement not to "execute any agreement providing for a distribution of his or her property other than that contained in the joint will executed simultaneously herewith" and further providing that "it being understood and agreed that after the death of either party," no new will was to be executed by the other. (155 Misc. at 541, 280 N.Y. Supp. at 11.) The will's provision gave "unto the survivor of us, all and any real and personal property either owned by us jointly or severally for his or her own use and benefit forever." The following article of the joint will provided: "Upon the death of both of us in a common accident or upon the

death of the survivor of us, all the property * * * is hereby given, devised and bequeathed to our children * * *." (155 Misc. at 540, 280 N.Y. Supp. at 10.) The Supreme Court found that a contract existed to devise the property received, despite the use of the word "forever" in the dispositive provisions to the survivor.

While the will here being considered is structured differently than that in *Ralyea*, nevertheless that case is most persuasive for the proposition that under the law of New York, language of absolute gift may be overridden by a contractual agreement.

We think that a New York court, if confronted by the will herein under consideration, would hold that a contract does exist. To find otherwise would require a complete negation of the first paragraph of the will. As we read the will, the primary concern of both parties was that the son be the ultimate beneficiary of the property of both. Since neither party desired to leave the survivor unprovided for until his or her death, the contract was entered into to assure that the survivor would have use of that property but could not dispose of it to anyone other than the son at death.

We are buttressed in our result by the fact that the disposition of the "estate of Mae Opal" in clause C of provision second is to "our son." This would indicate that the Estate of Mae Opal is being devised by both parties. Such language could only be consistent with the proposition that both spouses' properties have been collectivized contractually and are to go to the son on the death of the last one to survive—in this case Mae. Moreover, throughout the will the pronoun "we" is used. There is no indication of individual devising by either party. The wording in clause C is not, "I, Mae, devise my estate to my son." The use of such pronouns as "we" and "our" has been considered strong evidence by the New York courts of a contractual obligation, and we so construe it here. *Rastetter* v. *Hoenninger*, 214 N.Y. 66, 108 N.E. 210 (1915); *Tutunjian* v. *Vetzigian*, 299 N.Y. 315, 320, 87 N.E. 2d 275, 277 (1949).

Further, the language in clause C is in the present tense. It has been stated that such a verb tense implies a present joint intention to make a gift of property to the named beneficiary, effective upon the survivor's death but binding as of the signing of the will.[3] *Rubenstein* v. *Mueller*, 19 N.Y. 2d 228, 232, 225 N.E. 2d 540, 542–543 (1967).

We note, at this point, that petitioner at trial tried to fortify the argument that "a fee simple and absolute" had been received from the testator by testimony as to Edward's intent in writing the will, spe-

---

[3] The phrasing used in the will under consideration in *Rubenstein* was:

"[u]pon the death of the second one of us to die, or in the event of our simultaneous deaths or deaths resulting from a common disaster, then the estate of the second decedent, or of both of us as the case may be, is hereby bequeathed, devised and disposed of as follows * * * [19 N.Y. 2d at 232, 225, N.E. 2d at 542.]"

cifically, the type of property interest intended to be devised and bequeathed to Mae. In this regard, Mae stated that they "were fully agreed that the one who remained could take that estate and do whatever he or she wanted to do with it." Somewhat analogous testimony was also given by the scrivener and the son.

Several joint and mutual will cases are cited by the petitioner for the proposition that such testimony is admissible for the purpose of construing the will's dispositive provisions. *Rastetter* v. *Hoenninger, supra; Matter of Rubin*, 48 Misc. 2d 539, 265 N.Y.S. 2d 407 (Sur. Ct. 1965); *Azzara* v. *Azzara*, 1 App. Div. 2d 1012, 151 N.Y.S. 2d 458 (1956); *Matter of Awuilino*, 53 Misc. 2d 811, 280 N.Y.S. 2d 85 (Sur. Ct. 1967). We think none of these cases are in point. If they are read carefully it will be found that the statements of the testator, admitted into evidence, related to whether or not there was a contract to make the will irrevocable; not to the meaning of the specific dispositive provisions which would be irrevocable if a contract were found to exist.

The settled law of New York is that express declarations of intention not contained in a will (except in cases of equivocation as to the subject or object of a gift) may never be shown. *Matter of Smith*, 254 N.Y. 283, 172 N.E. 499 (1930). See also *Manion* v. *Peoples Bank of Johnstown*, 292 N.Y. 317, 55 N.E. 2d 46 (1944); *Matter of Deane*, 4 N.Y. 2d 326, 151 N.E. 2d 184 (1958). The testimony elicited by petitioner in the instant case has been considered and found to fall far short of nullifying the express contractual language of the opening paragraph of the joint will in issue. We have found, and hold that a contract did exist. Insofar as the testimony is designed to reveal or prove Edward's dispositive intentions, it is inadmissible. On Edward's death, Mae was contractually bound to devise and bequeath her estate and the unconsumed property received from Edward to their son, Warren.

Respondent argues that a property interest received pursuant to such an obligation is in effect a life estate with broad powers of invasion that do not include the ability to dispose of that property by gift while living. We find ourselves in agreement.

The rights and duties of a spouse contractually bound under a joint and mutual will to devise his property to a named beneficiary have been stated by the New York Court of Appeals (*Rastetter* v. *Hoenninger*, 214 N.Y. 66, 74, 108 N.E. 210, 212 (1915)) to be as follows:

What the parties disabled themselves from doing was the making of a different testamentary disposition after accepting the benefits of the agreement. Each, during his life, remained the absolute owner of his own with all the rights of an owner. Certainly nothing short of plain and express words to that effect should suffice in such a case to limit the use, or to impress a trust upon, the property of each during his own life. Of course, the agreement had to be carried out honestly and in good faith. The survivor could not after accepting the benefits of the

agreement make a gift in the nature, or in lieu of a testamentary disposition or to defeat the purpose of the agreement. Upon the death of the wife, the husband undoubtedly became trustee of her personal estate for the remaindermen. And if the identical money received from her can be traced to the purchase of the said real estate (See Matter of Hicks, 170 N.Y. 195, 63 N.E. 276), equity will impress a trust upon it. In such case it will not be an answer to say that upon his death the husband left a larger personal estate than he received from his wife. A trustee may not convert trust funds to his own or another's use on the chance that upon his death his personal estate after the payment of his debts may be sufficient to reimburse the trust estate; but, so long as the identical money can be traced, it will retain its character as trust property, no matter what form it may take.

See also *Matter of Rubin*, 48 Misc. 2d 539, 542, 265 N.Y.S. 2d 407, 411 (Sur. Ct. 1965).

Technically, under New York law, a person who is obligated to leave his estate to a named beneficiary may execute a new will devising and bequeathing the property to another, and it will be probated; however, the property is impressed in equity with a trust for the contractual beneficiary and those taking under the new will are precluded from asserting an interest in the property.

In other words, if the survivor of the two testators breaches the contract by executing a will other than that agreed upon, the courts will compel his executors to "perform the contract". (Tutunjian v. Vetzigian, 299 N.Y. 315, 319, 87 N.E. 2d 275; see, also, Hermann v. Ludwig, 229 N.Y. 544, 129 N.E. 908.) Indeed, as we observed in the Tutunjian case (299 N.Y., at p. 319, 87 N.E. 2d at p. 277), "to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other 'would be a mockery of justice'. Mutual Life Ins. Co. v. Holloday, 13 Abb. N.C. 16, 24." [*Rich v. Mottek*, 11 N.Y. 2d 90, 181 N.E. 2d 445.]

Also see *Tutunjian v. Vetzigian*, 299 N.Y. 315, 321, 87 N.E. 2d 275, 277 (1949) ; *Hermann Ludwig*, 186 App. Div. 287, 296–297, 174 N.Y. Supp. 469, 474 (1919), affd. 229 N.Y. 544, 129 N.E. 908 (1920). Likewise, should a party attempt to defeat the contract by giving the property away before death, such gift will be set aside and the contractual beneficiary will take. *Ralyea* v. *Venners, supra; Swerdfeger* v. *Swerdfeger*, 4 App. Div. 2d 535, 167 N.Y.S. 2d 775 (1957).

The effect of such limitations is the same as if Edward had by will given a life estate to Mae with broad powers over the property and remainder in Warren. We are confirmed in this view by the recent statement of the Court of Appeals in *Rubenstein* v. *Mueller, supra*, wherein the court described the interest received under a joint and mutual will pursuant to an obligation to devise an estate thereafter as : "really * * * but an interest during his life with a power to use or otherwise dispose of principal, and the named beneficiary took the interest which remained." (225 N.E. 2d at 543.)

As indicated by the above, Mae has a considerable amount of discretion as to the manner in which she may deal with the property re-

ceived, subject to the limitation against devising, or giving it away to defeat the purpose of the contract. The fact that she may sell such property to obtain funds to expend on herself or reinvest in other property does not prevent either the unexpended funds from going to the son or the property into which those funds are invested from passing to the son. Everything of which she dies possessed will go to him. She assuredly could not merely sell the property and give the money, or its reinvested equivalent away, if the limitation on gifts is to have any meaning.

Such a property interest obviously cannot be considered "a fee simple and absolute," nor has it ever been described as such by the New York courts. The limitations imposed are inconsistent with such a hypothesis.

Respondent argues that it follows from the above limitation that the value of Mae's property interest fails to qualify for the marital deduction, because her interest is a terminable one under section 2056 (b) (1) which does not qualify as a life estate with a power of appointment under section 2056 (b) (5).

If there is any possibility that the property interest received by Mae from Edward "may" terminate, so that any part of the property will thereafter be possessed or enjoyed by a person who has an interest in such property which passed from Edward at or before the time of his death other than for adequate consideration, then Mae's interest in such property is terminable under subsection 2056(b) (1). In ascertaining whether a "terminable interest" exists, it does not matter what the particular estate to the spouse is called, *Estate of Wallace S. Howell*, 28 T.C. 1193 (1957), or whether specific property or a general class (such as residuum) is involved. What does matter is whether the conditions of 2056(b) (1) are met. According to section 20.2056(e)– 2(a), Estate Tax Regs., the marital deduction "may not be taken with respect to a property interest which passed to such spouse merely as trustee, or subject to a binding agreement by the spouse to dispose of the interest in favor of a third person."

Section 2056 does not define the term "interest" and the regulations only inferentially mention the term in section 20.2056(b)–1(e) (2), Estate Tax Regs., which states:

(2) In determining whether an interest in the same property passed from the decedent both to his surviving spouse and to some other person, a distinction is to be drawn between "property," as such term is used in section 2056, and an "interest in property". The term "property" refers to the underlying property in which various interests exist; each such interest is not for this purpose to be considered as "property."

In the legislative history of the enactment the only definitional reference to "interest" is made in the following comment (Supp. S. Rept. No. 1013, Part 2, 80th Cong., 2d Sess., p. 4 (1948), 1948–1 C.B. 333):

The terms "interest" and "property," as used in section 812(e) [sec. 2056, Revenue Act of 1954] have separate and distinct meanings. The term "property" is used in a comprehensive sense and includes *all* objects or rights which are susceptible of ownership. The term "interest" refers to the extent of ownership, that is, to the estate or the quality and quantum of ownership by the surviving spouse or other person, of particular property. For example, if the surviving spouse is specifically devised an estate for her life in a farm, the "interest" passing to her is the life estate, and the "property" in which such interest exists is the farm. * * * If the decedent's general estate or the trust consists of assets which are themselves interests in property (such as leases), the interest so bequeathed, devised, or transferred is an interest in such property.

There is no indication in the legislative history or in the regulations that the term "interest" is to be given a technical and narrowly confined construction. Various other phrases in the terminable interest definition of section 2056(b) were intended by Congress to be broadly construed. For example, the term "event or contingency" was to be all encompassing with respect to various kinds of contingencies which might terminate the spouse's interest. Supp. S. Rept. No. 1013, Part 2, 80th Cong., 2d Sess., p. 7 (1948), 1948–1 C.B. 336. The phrase "possess and enjoy," also is to be construed broadly. Supp. S. Rept. No. 1013, Part 2, 80th Cong., 2d Sess., p. 8, 1948–1 C.B. 337. We likewise think that in the requirements of section 2056(b)(1)(A) Congress meant to cover a broad range of situations in which another person (by reason of the decedent's particular mode of disposition of his property to the spouse) might possess or enjoy the property after the termination of the spouse's interest for less than an adequate and full consideration.

The term "interest," like the terms "right" or "duty," can take on various shades of meaning depending on the context in which it is utilized. In section 2056(b) it must be construed in light of the congressional intent to allow the deduction only for *outright* gifts to the spouse. S. Rept. No. 1013, Part 1, 80th Cong., 2d Sess., p. 28 (1948), 1948–1 C.B. 305. In light of this intention, we think "interest" was meant to encompass any situation in which the spouse got less than outright ownership of the property and another possessed some existing rights as to the property, or the possibility existed that that person would have possession or enjoyment of it in the future.

As pertains to the particular situation before us, we do not think that a fine distinction should, or can be made, with regard to the term "interest" in the context of specific property versus a general class of property, merely because a conveyance of specifically bound property will breach the contract but a conveyance out of a general class may not. In the case of specific devises, the contractual beneficiary can prevent the property from being disposed of, or cause its reconveyance, from any one other than to a bona fide purchaser without notice, and can thus assure that the very property is in the estate of the

promisor at death. In the case of a general class devise, he cannot prevent the disposition of any particular property, though he can be assured of having the proceeds of disposition or their reinvested equivalent in the promisor's estate, if it has not been consumed by the promisor.

The former situation resembles in result the traditional life estate with income only from the property and the remainderman to take after the death of the spouse. The latter resembles in result a life estate with powers of consumption and even of disposition (so long as the disposition is not in fraud of the rights of the remainderman) with the remainderman to take what is left.

If the named contract beneficiary is considered not to have "interest" in the general class situation, it should follow that a life estate in specific property which gives the spouse power to dispose of that property at discretion in order to reinvest the proceeds, or utilize them for consumption, but not to make the proceeds his own, would be a nonterminable interest because there is no "interest" in specific property in the remainderman. Obviously this is not so, even though the remainderman cannot be assured that the same property will eventually come to him. We have held that a life estate with such powers is a terminable interest, if State law does not deem the powers to create a fee simple in the spouse and defeat the rights of the remainderman. *Estate of Edward F. Pipe*, 23 T.C. 99 (1954), affd. 241 F. 2d 210 (C.A. 2, 1957), certiorari denied 355 U.S. 814 (1957); cf. *Estate of Ralph G. May*, 32 T.C. 386 (1959), affd. 283 F. 2d 853 (C.A. 2, 1960), certiorari denied 366 U.S. 903 (1961); *Estate of Thomas J. Semmes*, 32 T.C. 1218, affirmed per curiam 288 F. 2d 664 (C.A. 6, 1961). The "interest" held in this situation may be termed a future interest in the property which has not been sold by death, or consumed, and in the proceeds of property which has not been consumed.

In the situation of a contractual obligation to devise general property, the future "rights" of the named beneficiary are the same though the form of the decedent's disposition is different. We do not think that form prevails over substance, nor that Congress meant by the phrase "interest in property" that the property to be possessed after termination of the spouse's interest had to be the very same property which had been bequeathed to the spouse. This is untenable. Congress was not concerned with whether specific property devised by the decedent was to be received by the person other than the spouse after the termination of the interest of the spouse. It *was* concerned with the *powers* which the spouse had over the property she received. The power of sale of that property without unfettered dominion over its proceeds is not an outright gift of the property. The term "interest in property" in section 2056(b)(1)(A) must be construed to mean interest

in property or its proceeds, and the term "interest" itself must include the possible future rights which a party other than the spouse may have in the property or its proceeds after the spouse's death. This is as opposed to including only presently existing rights in specific property.

*Estate of James Mead Vermilya,* 41 T.C. 226 (1963), is distinguishable. That case was decided under Minnesota law and we held that the will there in issue granted "a fee simple absolute title" (an absolute estate) to the surviving spouse. The will under consideration in the instant case does have specific contractual language, and the New York law is clear that a contract does exist and that the interest of Mae in such property is *not* absolute. Nothing necessary to our decision in *Vermilya* is in conflict with our holding herein. After Mae's death, Warren may possess and enjoy the property received or the unconsumed proceeds of the property which is sold. The fact that Mae may consume the entire property during her lifetime so that there would be no residue for the son to enjoy does not prevent her interest from being terminable. The situation as of the time of the decedent's death controls. *Estate of Wallace S. Howell, supra* at 1195. As of that time there is the possibility of Warren enjoying or possessing the property. We find and hold that Mae's interest is terminable under section 2056 (b) (1).

The fact that a "terminable" interest exists, however, does not preclude qualification for the marital deduction if one of the exceptions of section 2056 applies. In this regard we refer back to regulation section 20.2056(e)–2(a), which, in light of the foregoing analyses, applies squarely to the situation at hand. This regulation must be interpreted to preclude qualification of property which is contractually bound to go to another under any exception of 2056 to the "terminable interest" rule and we find ourselves in agreement with it.

The only possible applicable exception is in section 2056(b) (5). If we were to assume that this subsection applied to Mae's interest by considering it to be a life estate with remainder in Warren, then the question arises whether her powers over the property are the same as a power of appointment to herself or to her estate.

The law is well settled that a life estate with unlimited power of invasion of the corpus qualifies as a power of appointment to the self in all events under that subsection. *Estate of Elwood Comer,* 31 T.C. 1193 (1959) ; *Estate of Theodore Geddings Tarver,* 26 T.C. 490 (1956), affd. 255 F.2d 913 (C.A. 4, 1958) ; *Estate of E. W. Noble,* 31 T.C. 888 (1959). According to section 20.2056(b)–5(g), Estate Tax Regs., in order to constitute an unlimited power of invasion:

(2) The power of the surviving spouse must be a power to appoint the entire interest or a specific portion of it as unqualified owner (and free of the trust if a trust is involved, or free of the joint tenancy if a joint tenancy is involved)

or to appoint the entire interest or a specific portion of it as a part of her estate (and free of the trust if a trust is involved), that is, in effect, to dispose of it to whomsoever she pleases. * * *

(3) * * * a power is not "exercisable in all events" if it may be exercised for a limited purpose only. * * * Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will).

Considering her interest as a life estate, Mae's powers over the property do not fall within section 2056(b)(5). She cannot give the property away while living to anyone. To be sure she may consume at her discretion and dispose of the property for her own use, but that is not sufficient power to fall within the provision. It falls short of the power to appoint as unqualified owner, required by the exception. Cf. *Estate of Ralph G. May, supra; Estate of Edward P. Pipe, supra; Estate of Thomas J. Semmes, supra.*

We note that there may be a possibility that the unconsumed portions of the property received from Edward will be included in Mae's gross estate for Federal tax purposes because of her powers over the property. This possibility of double taxation is not, however, a sufficient basis for allowing a marital deduction if the property interest does not comply with the statutory requirements of 2056. Cf. *Pipe's Estate* v. *Commissioner*, 241 F.2d 210, 214 (C.A. 2, 1957), affirming 23 T.C. 99 (1954), certiorari denied 355 U.S. 814 (1957); *May's Estate* v. *Commissioner*, 283 F.2d 853, 856 (C.A. 2, 1960), affirming 32 T.C. 386 (1959), certiorari denied 366 U.S. 903 (1961); *Starrett* v. *Commissioner*, 223 F.2d 163 (C.A. 1, 1955); *Shedd's Estate* v. *Commissioner*, 237 F.2d 345 (C.A. 9, 1956), affirming 23 T.C. 41 (1954), certiorari denied 352 U.S. 1024 (1957).

We find and hold that the value of the property interest received by Mae does not qualify for the marital deduction.

Insofar as the claimed deduction for $2,000 in expenses of administration under section 2053 [4] is involved, we must also hold for the respondent. Petitioner has not carried her burden of proof to show

---

[4] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\* \* \* \* \* \* \*

(2) for administration expenses,

\* \* \* \* \* \* \*

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

that these expenses were "actually and necessarily incurred in the administration of the decedent's estate." Sec. 20.2053–3(a), Estate Tax Regs.[5] At trial her only testimony in this regard was to the effect that she paid about $2,000 to an accounting firm for the estate. She made no statement as to the nature of their services other than her reply to a question asking whether she had spent more than the $9,500 allowed for the accountants by respondent. She answered, "Yes, in the preparation of getting all these papers together, because I knew nothing at all about his affairs, they had a lot of preparations and took about a year or so before they got that presented and I gave them about $2,000." Such statement falls far short of overcoming the presumption of correctness attaching to respondent's determination.

To reflect concessions of the parties,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

DAWSON, *J.*, concurring: I concur in the result reached by the majority solely on the ground that, under New York law, the interest which Mae received in the property was "in effect a life estate with broad powers of invasion" and as such was a terminable interest within the meaning of section 2056(b)(1). Since Mae received only a terminable interest from Edward, I cannot agree with the majority "that there may be a possibility that the unconsumed portions of the property received from Edward will be included in Mae's gross estate for Federal tax purposes because of her powers over the property." Because we do not have the question of Mae's estate tax liability before us, I would not intimate *any* opinion with respect thereto.

FAY and STERRETT, *JJ.*, agree with this concurring opinion.

SIMPSON, *J.*, concurring: I concur in the conclusion of the Court, but I cannot embrace all its reasoning. In obeisance to the principle of stare decisis, the Court asserts that this case is distinguishable from our decision in *Estate of James Mead Vermilya*, 41 T.C. 226 (1963). I do not agree. Here, we are adopting a different interpretation of the term "interest in property" as used in section 2056(b)(1)(A), and to that extent, we are overruling *Vermilya*.

[5] Sec. 20.2053–3 Deduction for expenses of administering estate.—

(a) *In general.* The amounts deductible from a decedent's gross estate as "administration expenses" of the first category (see paragraphs (a) and (c) of § 20.2053–1) are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. * * *

\* \* \* \* \* \*

(d) *Miscellaneous administration expenses.* (1) Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, including the cost of storing or maintaining property of the estate, if it is impossible to effect immediate distribution to the beneficiaries. * * *

In *Vermilya*, as well as in the case before us, we had to examine State law to determine the rights and obligations created by mutual wills. In *Vermilya*, the Court indicated that in the case of a devise of specific property, the contract beneficiary had rights which could not be abrogated by the surviving spouse, and that the rights of the contract beneficiary constituted an "interest in property" within the meaning of section 2056(b)(1)(A). The Court's findings as to the rights of the contract beneficiary in the case of the general devise are less specific, but it is clear that under Minnesota law the beneficiary had some rights restricting the rights of the surviving spouse with respect to the property; but the Court found that such rights of the contract beneficiary did not constitute an interest in property under section 2056(b)(1)(A).

In the case before us, the Court had to ascertain the rights of the surviving spouse and the contract beneficiary under New York law. The Court's findings with respect to such rights are more elaborate than in *Vermilya*, but there is nothing inconsistent with the findings as to Minnesota and New York law in this respect. Both opinions recognize that there are some restrictions on the surviving spouse and that the contract beneficiary has some rights with respect to the property. Yet, the Court now considers that those rights of the contract beneficiary constitute an interest in property under section 2056(b)(1)(A). The different conclusions in the two cases do not result from different interpretations of State law; rather, the difference results from a different interpretation of section 2056(b)(1)(A) as to what constitutes an interest in property. In *Vermilya*, the Court apparently thought that the rights of a contract beneficiary, in the case of a general devise, did not constitute an interest in property since they did not pertain to specific identifiable property, but the Court now takes the position that such rights do constitute an interest in property even though there is no right to receive the specific property devised by the decedent.

In my opinion, the interpretation of "interest in property" now adopted by the Court properly carries out the legislative purpose, but we should recognize that we are overruling the interpretation of such term included in the *Vermilya* opinion.

IRWIN, *J.*, agrees with this concurring opinion.

———

DRENNEN, *J.*, dissenting: In my view the majority opinion becomes so unnecessarily enmeshed in the subtleties of New York law, the abstract meaning of individual words, and an effort to overrule and yet distinguish *Estate of James Mead Vermilya*, 41 T.C. 226, a rather recent court-reviewed opinion of this Court, that it ignores the clear

intention of the testator as expressed in the joint will, and the obvious intent of Congress in providing for the marital deduction.

It appears obvious to me that if meaning is to be given to all of the words of the joint will, the first of the testators to die devised and bequeathed all of the residue and remainder of his estate to the survivor, to be the survivor's "absolutely and forever," and the survivor irrevocably devised and bequeathed the remainder of her estate unto their son. Of course, this would include any part of the estate of the first to die that was a part of the survivor's estate at the time of her death. It is obvious that the principal object of the bounty of each of the testators was the other, and that in using the words "absolutely and forever" in paragraph B of the disposing paragraphs they intended to give the remainder of their estates to the other without limitation. It is prefectly consistent with such an interpretation of paragraph B that in paragraph C the survivor would will the remainder of *her* estate to their son. Paragraph C of the second clause in the will provides that upon the death of Mae, the remainder of *her* estate is given to the son—it says nothing about the remainder of Edward's estate. Such an interpretation gives effect to all of the provisions of the will, whereas the majority view would really nullify the effect of the words "absolutely and forever."

I do not deny that Mae contracted to give the remainder of her estate, including any part of Edward's estate which formed a part of her estate at the time of her death, to the son; and I need not dispute, to reach my conclusion, that this was a binding and enforceable contract. But what was the contract? It bound Mae to leave the remainder of *her* estate to the son. Edward gave nothing to the son under the second clause of the will, and that is the only clause that is relevant here.

Section 2056(a) allows a deduction from the gross estate of an amount equal to the value of any interest in property which passes from the decedent to the surviving spouse, if that interest was included in decedent's gross estate. The property passing to Mae from Edward's estate clearly meets these requirements. But paragraph (b) puts a limitation on the deduction in the event the interest passing to the surviving spouse is a terminable interest. Subsection (b)(1) provides that where, on the lapse of time or the occurrence or failure to occur of an event or contingency an interest passing to the surviving spouse will terminate or fail, no deduction will be allowed with respect to such interest if (A) an interest in such property passes from the decedent to any other person.

I fail to see how this limitation applies here. No interest in Edward's property passing to Mae passed to the son from Edward under the second clause of the will. Even if, as the majority concludes, this second

clause gave the son an enforceable right to require Mae to leave the remainder of her estate to him, this was an agreement on the part of Mae to leave the remainder of *her* estate to the son. Any interest in Edward's property that passed to the son had to pass from Mae to the son, not from Edward, because the only contractual obligation was that Mae will the remainder of *her* estate to the son.

One of the purposes of Congress in providing a marital deduction from the value of interests in property passing from one spouse to a surviving spouse and eventually on to a second beneficiary was to avoid a double estate tax on such transfers. In broad terms, if the property would become a part of the taxable estate of the surviving spouse and would be taxed in her estate in the event she retained it until death, the deduction is allowable to the estate of the first to die. However, if the interest passing to the surviving spouse is a type of interest that would not be includable in the survivor's taxable estate, then a deduction is not allowed to the estate of the first to die. This assures taxation of the property passing from the two spouses once but not twice. Here, I do not believe anyone would claim, and the majority does not discuss it, that any part of Edward's estate remaining in Mae's possession at the time of her death would not be taxed as a part of her estate. To be consistent, the majority, in concluding that Mae's interest was a terminable interest for purposes of the marital deduction in Edward's estate, would have to agree that Mae took only a life estate with a limited power to consume during her life, in Edward's property, and consequently any part of Edward's estate that passed to the son on Mae's death passed directly from Edward to the son and the transfer would not be taxable in Mae's estate. If this purpose of Congress in allowing a marital deduction has any validity as a test of whether the marital deduction is allowable here, so that one is faced with a choice of allowing a marital deduction in Edward's estate or not taxing the property in Mae's estate, it seems obvious to me that both under the law and the entire language of the will, the choice should be in favor of allowing the marital deduction to Edward's estate, which I would do here.

HOYT, *J.*, agrees with this dissent.