Estate of Cornelia Plassche Cook, Walter M. Plassche, Executor v. Commissioner.
Estate of Cook v. Commissioner
Docket No. 2852-68.
United States Tax Court
T.C. Memo 1970-68; 1970 Tax Ct. Memo LEXIS 292; 29 T.C.M. (CCH) 298; T.C.M. (RIA) 70068; March 19, 1970, filed. Sidney R. Rubin, Suite 404 Central Trust Bldg., 44 Exchange St.,%rochester, N. Y., for the petitioner John E. White, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent has determined a deficiency in petitioner's Federal estate tax of $11,386.26. The only issue is whether the decedent possessed at the time of her death a general power of appointment (within the meaning of section *293 2041(b)) [1] with respect to a testamentary trust previously established by her husband. 299 The testimony of the Honorable Marshall E. Livingston was taken by deposition. In all other respects the facts have been stipulated by the parties and are found accordingly. On July 12, 1964, the decedent, Cornelia Plassche Cook (hereinafter referred to as Cornelia) died testate. Her will was duly admitted to probate by the Surrogate's Court of Wayne County, New York (hereinafter referred to as the Surrogate's Court) on September 8, 1964, and Walter M. Plassche was duly appointed and qualified as executor of her estate and is still acting in that capacity. As executor, he timely filed a Federal estate tax return for the estate with the district director of internal revenue at Buffalo, New York. He resided in Williamson, New York, at the time the petition to this Court was filed. Cornelia was a widow. Isaac Cook (hereinafter referred to as Isaac) was her last husband. When she married Isaac, she was a widow and Isaac was a widower. Orville L. Cook (hereinafter referred to as Orville) was the *294 only issue of Isaac's prior marriage. Cornelia's marriage to Isaac had no issue. On July 11, 1952, Isaac and Cornelia met with Marshall E. Livingston, who was then in private practice of law and is hereinafter sometimes referred to as Livingston. The purpose of the meeting was to discuss the drafting of a will for Isaac. Livingston had never met either Isaac or Cornelia before. He had the impression that Isaac's estate was substantial. At this meeting, Isaac expressed his desire to make provision for Cornelia while at the same time ensuring that Orville would receive the bulk of his property. He also was interested in minimizing the tax impact on his estate. Livingston explained to Isaac that, under New York law, Cornelia, if she survived him, would have certain rights to elect against his will, He further advised Isaac that estate taxes could be partially avoided by leaving his entire estate in trust to Cornelia for life, with a power of appointment. He explained that the power of appointment would have to be unqualified. Finally, he suggested that Cornelia might be able to renounce the power of appointment by a codicil to her will, so as to ensure that the bulk of Isaac's estate *295 would eventually go to Orville. At this same meeting, Cornelia said that making provision for her was not necessary, since she had enough of her own to be financially independent. She also stated that Isaac did not have to be so generous. In the next few days, Livingston determined to his own satisfaction that an irrevocable renunciation of the proposed power of appointment by Cornelia was possible. He also contacted Cornelia's lawyer and discussed the matter with him. He then prepared a draft of a will for Isaac and a draft of a codicil for Cornelia. The will thus prepared read, in pertinent part, as follows: FOURTH: In the event that my wife, Cornelia P. Cook, shall survive me, then I give, devise, and bequeath all the rest, residue, and remainder of my estate, both real and personal, to my Trustee hereinafter named IN TRUST for the following uses and purposes: My Trustee shall hold, manage, invest, and reinvest such legacy as a separate trust for the sole and exclusive benefit of my said wife and shall collect and receive all the income therefrom and shall pay over the income so earned after my death to her in quarter annual or more frequent installments so long as she *296 shall live. In the event that the income from said trust is insufficient to properly provide for the comfortable care, maintenance, and support of my wife, including expenses of any illness, then my Trustee, in its discretion, after taking into consideration my wife's property and income therefrom, may invade the principal of my estate for the sole and exclusive benefit of my said wife. Upon the death of my said wife, my Trustee shall pay over and distribute the remainder of my trust estate as my wife shall appoint by her will, and if she shall fail to exercise such general power of appointment, then such corpus shall be added to and disposed of as part of my residuary estate. FIFTH: In the event my wife, Cornelia P. Cook, shall predecease me, or in the event she should fail to exercise the general power of appointment given to her by this Will in respect to my residuary trust estate, then all the rest, residue, and remainder of my estate, both real and personal, shall be distributed as hereinafter set forth: It is my direction that my son, Orville L. Cook, of Seneca Falls, New York, shall receive at least seventy-five (75) per cent of the remainder of my net estate and that *297 the following named legatees shall receive the legacies set opposite their names. * * * The terms of the codicil thus prepared for Cornelia read in pertinent part as follows: 300 Whereas my husband, Isaac Cook, has this day made and executed a new Will in and by which I understand that I am the life beneficiary of his estate in trust for my sole benefit with power of appointment over the residuary estate. Now, therefore, I wish to irrevocably here direct that upon my death the balance of the corpus or residuum of any funds held in trust for me by virtue of the will of my husband, Isaac Cook, shall pass pursuant to the terms of his will. In other words, I specifically refrain from making any direction whatever in relation to this property all of which belongs to my husband, but which is set apart to me as life tenant with a power of appointment. Despite my clear right to appoint this residuum, I want it understood that I direct this Codicil to be absolutely binding and a part of this or any subsequent will I might make. My husband, Isaac Cook, did not have to be as generous as he has been, and I, therefore, direct that my power of appointment irrevocably shall be either deemed *298 to have been unexercised, or if exercised that it follow exactly as though I had predeceased my husband and according to the terms of his will. * * * On July 14, 1952, Livingston met again with Isaac and Cornelia at their residence, Cornelia having consulted her lawyer in the meantime. Livingston explained to Isaac and Cornelia that he had researched the law and was satisfied that the arrangement, as represented by the will and codicil, was binding upon them. He read the will and codicil to them. He then asked them if they understood what was being done and if it was their wish that it be done in that manner. They indicated that they understood. Isaac then executed the will, and Cornelia the codicil. Isaac died on December 14, 1953. On January 22, 1954, the will of July 14, 1952, excerpted supra, was duly admitted to probate. The New York estate tax deposition filed in the Surrogate's Court with respect to Isaac's estate reflected a gross estate of $36,492.69 and a net estate of $16,877.19. The New York estate tax assessed thereon was $168.77. No Federal estate tax return for Isaac's estate was filed. Subsequent to Isaac's death, Cornelia elected, under New York law, [2] to *299 take against Isaac's will to the extent of $2,500 with the provisions of the will for her benefit otherwise remaining in full force and effect. She later was also paid an additional $1,000 from Isaac's estate pursuant to section 200, subdivision 4, of the Surrogate's Court Act of New York. [3]
Cornelia subsequently executed a new will dated October 17, 1961. In that will, she purported to exercise the power of appointment given her by Isaac's will so as to leave specific sums to named legatees (including Orville to the extent of $2,000) and to direct that the balance of Isaac's property be divided equally between her niece and Isaac's niece. The will made no other provision for Orville. The contentions of the parties herein center upon a single question: Did Isaac's will and Cornelia's codicil executed on July 14, 1952 constitute a binding agreement between them so as to preclude Cornelia from exercising what, on the face of Isaac's will, admittedly constituted *300 a general power of appointment under section 2041(b) and from providing a disposition different from that specified by Isaac in default of exercise? If it did, the parties agree that the property of Isaac over which Cornelia had such a power is not includable in her gross estate. Petitioner contends that there was such a binding agreement. Respondent asserts that there was not. We agree with petitioner. The issue before us is one of New York law ( Estate of Edward N. Opal, 54 T.C. 154 (Feb. 5, 1970)) and, in making our determination, we are mandated by the Supreme Court to decide how the highest court of New York would resolve the issue. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). We recognize that, under New York law, a high standard of proof is required to establish a binding agreement respecting the testamentary disposition of property. Oursler v. Armstrong, 10 N. Y. 2d 385, 179 N.E. 2d 489 (1961); Hamlin v. Stevens, 177 N. Y. 39, 69 N.E. 118 (1903); Edson v. Parsons, 155 N. Y. 555, 50 N.E. 265 (1898); Swerdfeger v. Swerdfeger, 4 App. Div. 2d 535, 167 N. Y. S. 2d 775 (3rd Dept. 1957). *301 And we further recognize that the mere existence of complementary testamentary dispositions is not sufficient. Oursler v. Armstrong, supra.However, a contract may be spelled out from the language used by the testators or from the surrounding circumstances. SeeRich v. Mottek, 11 N. Y. 2d 90, 181 N.E. 2d 445 (1962). 301 Certainly the language of Cornelia's codicil reveals that she considered herself bound not to exercise the power of appointment conferred upon her by Isaac. Perhaps this fact, standing alone, would be insufficient under New York law in the absence of words of "consideration" or "promise" in either Isaac's will or Cornelia's codicil. But whatever ambiguity may exist on the face of the documents themselves is substantially cured by Livingston's testimony. [4] His advice to Isaac and Cornelia that the will and codicil constituted a binding arrangement between them established a critical precondition to the execution of those documents. [5] The overriding facts are that Isaac was primarily concerned about having the bulk of his estate go to Orville, subject only to adequate provision for Cornelia during her lifetime, and that Cornelia was *302 desirous of assuring him that his concern would be respected. Livingston's advice provided both of them with the assurance that such would be the case. *303 We are satisfied that, on the basis of all the facts and circumstances, the Court of Appeals of New York, were it presented with the issue, would conclude that Cornelia was effectively precluded from exercising her power of appointment. Cf. Rich v. Mottek, supra, and cases cited therein. 11 N. Y. 2d at p. 95, 181 N.E. 2d at p. 447. The parties have stipulated that, in determining the taxable estate herein, the attorneys' fees and disbursements incurred in connection with the litigation of this case shall be allowed as an additional deduction. Accordingly, in order to give the parties an opportunity to determine the amount of such deduction, by agreement or otherwise. Decision will be entered under Rule 50. Footnotes
1. All references, unless otherwise indicated, are to the Internal Revenue Code of 1954.↩
2. Now N. Y. Estates, Powers and Trusts Law, sec. 5-1.1(a)(1)(B)↩ (17B McKinney, 1967). 3. Now N. Y. Estates, Powers and Trusts Law, sec. 5-3.1(a)(4)↩ (17B McKinney, 1967).
4. It is important to note that this testimony was not directed to establishing the meaning of dispositive provisions but rather to the existence of a binding agreement that dispositive provisions would not be altered. See Estate of Edward N. Opal, 54 T.C. - (Feb. 5, 1970). Respondent objected only to the introduction of certain documentary evidence, in connection with Livingston's testimony, consisting of various legal papers which formed part of the litigation involving Isaac's and Cornelia's respective legatees. By separate order, we have sustained respondent's objections in these respects and accordingly have not considered any aspect of such litigation, or the settlement thereof, in reaching our conclusion herein. ↩
5. Respondent has raised no question as to the invalidity of an agreement to appoint, perhaps because the agreement was with the donor rather than a third party. Cf. Farmers' Loan & Trust Co. v. Mortimer, 219 N. Y. 290, 114 N.E. 389 (1916). Compare also N. Y. Estates, Powers and Trusts Law, sec. 10-5.3 (17B McKinney, 1967), which deals with the validity of contracts to appoint and which became effective on September 1, 1967. That section superseded a comparable provision contained in N. Y. Real Property Law, sec. 146↩ (49 McKinney, Supp. 1967, p. 198), which became effective on June 1, 1965.